**Juan DIAZ, Plaintiff,**

v.

**CITY OF CHICAGO, Thomas Braham, James Zarno, William Duffy and Chicago Police Department Intelligence Division Officers # 216, # 393 and # 541, Defendants.**

No. 84 C 7863.

United States District Court,
N.D. Illinois, E.D.

Dec. 26, 1984.

Richard M. Gutman, Chicago, Ill., for plaintiff.

Peter Fitzpatrick, James Montgomery, Chicago, Ill., for defendants.

**1252**

Thomas Braham, Chicago, Ill., pro se.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge.

During the summer of 1966, plaintiff Juan Diaz ("Diaz") was the leader of a civil rights organization called the Spanish Action Committee of Chicago ("SACC"). Diaz alleges in this civil rights suit that the Intelligence Division of the Chicago Police Department conducted a secret operation in 1966 to destroy SACC and its leaders, including Diaz. As a result of these alleged efforts to destroy SACC and its leaders, Diaz claims that the defendants violated his First and Fourteenth Amendment rights and that he suffered mental anguish, public humiliation and emotional harm.

In June of 1984, another judge in this district presided over a seven-day jury trial in the case *Spanish Action Committee of Chicago v. City of Chicago*, No. 80 C 4714 ("the *SACC* case"). The *SACC* case involved precisely the same factual situation as the present case. The complaints in the two cases are virtually identical; both state claims under 42 U.S.C. § 1983 for violations of the same federal constitutional rights. Although Diaz was not named as a plaintiff in the *SACC* case, SACC (an unincorporated association) sued on behalf of itself and its members, and Diaz participated actively in the trial.

Presently before the Court is defendants' motion to strike and dismiss Diaz's suit on various grounds: res judicata, collateral estoppel, laches and the statute of limitations. For the reasons set forth below, defendants' motion is granted.[1]

■ The related doctrines of res judicata and collateral estoppel embody the fundamental precept of common law adjudication that a right, question or fact put in issue and directly determined by a court of competent jurisdiction cannot be disputed in a later suit between the same parties or their privies. *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). Res judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources and, by preventing inconsistent decisions, encourage reliance on adjudication. *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980); *Montana*, 440 U.S. at 153–54, 99 S.Ct. at 973–74.

■ Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. *McCurry*, 449 U.S. at 94, 101 S.Ct. at 414. The Seventh Circuit Court of Appeals has identified three elements of res judicata: (1) a final judgment on the merits in an earlier action; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits. *Lee v. City of Peoria*, 685 F.2d 196, 199 (7th Cir.1982). The first two factors are clearly present here. The jury in the *SACC* case returned a verdict, and the court entered final judgment. The cause of action is the same in the two suits because each action arises from the same set of operative facts. *Lee*, 685 F.2d at 200. Thus, the sole question in this case is whether the same parties or their privies are involved.

Defendants first argue that res judicata bars Diaz from bringing this action because he was a party in the *SACC* case. They acknowledge that he was not denominated as a plaintiff, but stress that SACC sued on behalf of itself *and its members* —and that Diaz was certainly a member in 1966 when the allegedly illegal activities occurred. Diaz was more than an ordinary member of SACC. Thus, defendants also assert that Diaz should be considered a party for res judicata purposes because he sat at the plaintiffs' table at trial, was introduced as the representative of SACC

---

1. Because we find that Diaz is barred by the doctrine of res judicata, we need not reach the laches and statute of limitations arguments. Nor, for the reasons set forth in this opinion, do we need to engage in a separate analysis of the doctrine of collateral estoppel.

and took the stand to testify at length about his injuries.

In support of their contentions about Diaz's status as a party, both defendants and Diaz cite *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), in which the Supreme Court discussed the standing of an association to sue on behalf of itself and its members. Under the principles enunciated in *Warth,* SACC was in fact able to assert the associational rights of all its members, Diaz included. There is no question that SACC purported to do this, both in its complaint and at trial. *See, e.g., SACC* Trial Transcript at 363–64 ("As I have often explained, we are suing because when the organization's rights were violated, all of its members' freedom of association to associate with a group that they belonged to was also violated. All the members of the Spanish Action Committee had their individual associational rights violated.") However, Diaz argues that *Warth* also holds that an association has no standing to sue for damages which are unique to a single member. *See Warth,* 422 U.S. at 515–16, 95 S.Ct. at 2213–14. Thus, Diaz asserts, SACC could not have represented him at trial, because his injuries differed from those of other members.

█ Given the holding in *Warth* that an association member must join an action as a separate party to recover particularized damages, we cannot say that Diaz was, in this sense, a party in the SACC case. Nevertheless, the fact remains that SACC represented Diaz's First Amendment right of association in the earlier litigation. It is apparent, then, that cases such as *Warth* which address only issues of standing shed little light on the questions of preclusion present in this case.[2] We thus turn to the case law dealing directly with preclusion issues.

Several recent cases illustrate "a loosening of the traditional and sometimes artifi-cial limitations on the application of res judicata and collateral estoppel doctrines." *Gerrard v. Larsen,* 517 F.2d 1127, 1134 (8th Cir.1975); *see also United States v. ITT Rayonier, Inc.,* 627 F.2d 996, 1003 (9th Cir.1980); *Jackson v. Hayakawa,* 605 F.2d 1121, 1126 (9th Cir.1979), *cert. denied,* 445 U.S. 952, 100 S.Ct. 1601, 63 L.Ed.2d 787 (1980). For example, in *Montana v. United States,* 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979), the Supreme Court held that one who is not a party still may be bound by a prior action if he had a sufficient interest in and control over the action. *Id.,* 440 U.S. at 154, 99 S.Ct. at 974. Other courts have gone even further, not requiring a nonparty to have *control* over the earlier litigation, but simply inquiring whether the nonparty fairly and actively participated in the first action. *E.g., Pinto Trucking Service, Inc. v. Motor Dispatch, Inc.,* 649 F.2d 530, 532 (7th Cir.1981); *ITT Rayonier,* 627 F.2d at 1003; *Gerrard,* 517 F.2d at 1135; *Treasure Salvors, Inc. v. Unidentified Wrecked and Abandoned Sailing Vessel,* 459 F.Supp. 507, 518 (S.D. Fla.1978), *aff'd,* 621 F.2d 1340 (5th Cir. 1980), *aff'd in part* and *reversed in part,* 458 U.S. 670, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982); *see also* 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4456 (1981) ("Any [association] member who actively participated in the first action should also be barred, without insisting on the same degree of involvement that is required by ordinary standards of participation and control.") (footnote omitted); 1B J. Moore, J. Lucas & T. Currier, Moore's Federal Practice ¶ 0.411[6] (2d ed. 1984).

In holding a nonparty bound because of his participation in an earlier proceeding, some courts have spoken of an expanding motion of privity. *E.g., Gerrard,* 517 F.2d at 1134 (fair and adequate participation in the prior adjudication is "functional privity"). Other authorities, including the Re-

---

**2.** *See* 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4456 (1981) ("The decisions that recognize such standing have not yet grappled with the preclusion questions that are bound to follow.") (footnote omitted).

One such decision in the Seventh Circuit is *Chicago-Midwest Meat Association v. City of Evanston,* 589 F.2d 278, 281 n. 3 (7th Cir.1978); *cert. denied,* 442 U.S. 946, 99 S.Ct. 2895, 61 L.Ed.2d 318 (1979).

statement (Second) of Judgments, have abandoned the term "privy" altogether. *See Montana*, 440 U.S. at 154 n. 5, 99 S.Ct. at 974 n. 5. Regardless of the nomenclature used, we believe Diaz is barred by the *SACC* action from bringing this case.

We have already noted that Diaz participated extensively in the *SACC* trial. He was one of SACC's primary witnesses, and his injuries were identified with the injuries suffered by SACC and its other members.[3] His presence in court at counsel table as SACC's representative, while perhaps not enough to make him a party, demonstrates how closely related Diaz's and SACC's interests were. Indeed, as explained above, some of his interests were actually represented by SACC in the earlier action.

There is no doubt that Diaz knew about the *SACC* case from its inception. However, Diaz has offered no good reason for failing to join that action as a separate party to seek whatever special damages to which he may have been entitled.[4] To the contrary, when asked why Diaz did not sue on his own behalf before now, his attorney (who also represented SACC earlier) stated, "Mr. Diaz didn't want to, your Honor." Such reticence is not without its costs. As the Eighth Circuit observed,

> In this era of overcrouded dockets the courts have a positive duty to restrict needless relitigation of issues. As Justice White has noted, "[t]he broader question is whether it is any longer tenable to afford a litigant more than one full and fair opportunity for judicial resolution of the same issue." *Blonder-Tongue Laboratories Inc. v. University of Illinois Foundation, supra*, 402 U.S. [313] at 328, 91 S.Ct. [1434] at 1442 [28 L.Ed.2d 788 (1971)].

*Gerrard*, 517 F.2d at 1134.

Various courts have either held or suggested that the opportunity to intervene may be enough to bind a person not a party. *See, e.g., Provident Tradesmens*

*Bank & Trust Co. v. Patterson*, 390 U.S. 102, 114, 88 S.Ct. 733, 740, 19 L.Ed.2d 936 (1968); *Penn-Central Merger and N. & W. Inclusion Cases*, 389 U.S. 486, 88 S.Ct. 602, 19 L.Ed.2d 723 (1968); *Cummins Diesel Michigan, Inc. v. The Falcon*, 305 F.2d 721 (7th Cir.1962); *Treasure Salvors*, 459 F.Supp. at 516. Unlike the nonparties in some of these cases, however, Diaz did not merely have notice of the other proceeding. Diaz actively participated in the *SACC* case, so preclusion of his action is even more appropriate.

■ We agree with the Eighth Circuit that "[i]n light of the changing application of the concepts of res judicata and collateral estoppel, the question of who should be bound by a prior adjudication ought to be resolved on a case by case basis by an examination of underlying facts and circumstances *rather than by reliance solely* upon the formal status of persons against whom an estoppel is asserted." *Gerrard*, 517 F.2d at 1135 (citation omitted). The underlying facts and circumstances of this case lead the Court to the inescapable conclusion that Diaz should be bound by the *SACC* action. Accordingly, defendants' motion to dismiss is granted. It is so ordered.

---

**3.** Diaz admits that his testimony was necessary at the *SACC* trial because "one of the major ways that defendants attempted to discredit SACC was by discrediting SACC's leader Juan Diaz."

**4.** Two other individual SACC members *were* named as separate parties.