MICHIGAN HOSPITAL ASSOCIATION, a Michigan nonprofit corporation; Bay Medical Center, a Michigan nonprofit corporation; Berrien County General Hospital, a county health facility; Botsford General Hospital, a Michigan nonprofit corporation; Carson City Hospital, a Michigan nonprofit corporation; Edward W. Sparrow Hospital, a Michigan nonprofit corporation; Ionia County Memorial Hospital, a municipally owned hospital; Lansing General Hospital, a Michigan nonprofit corporation; Macomb Hospital Center, a division of Detroit–Macomb Hospital corporation, a Michigan nonprofit corporation; Mercy Memorial Medical Center, Inc., a Michigan nonprofit corporation; St. Luke's Hospital, a Michigan nonprofit corporation; and Schoolcraft Memorial Hospital, a county health facility; individually and on behalf of all others similarly situated, Plaintiffs,

v.

DEPARTMENT OF SOCIAL SERVICES, an agency of the State of Michigan; C. Patrick Babcock, Director of the Michigan Department of Social Services; Department of Health and Human Services; and Louis W. Sullivan, Secretary of the Department of Health and Human Services, Defendants.

No. L89–40070.

United States District Court, W.D. Michigan.

Jan. 8, 1990.

Frederick M. Baker, Jr., Honigman, Miller, Schwartz & Cohn, Lansing, Mich., for plaintiffs.

Robert S. Welliver, Frank J. Kelley, Atty. Gen., Janis Meija, Asst. Atty. Gen., Robert S. Welliver, [COR LD NTC] Lansing, Mich., Christopher D. Dobyns, Asst. Atty. Gen., Daniel M. LaVille, Asst. U.S. Atty., John A. Smietanka, U.S. Atty., Grand Rapids, Mich., Barbara F. Altman, Dept. of Health & Human Services, Chicago, Ill., for defendants.

## OPINION

ENSLEN, District Judge.

This matter is before the Court on the federal defendants' motion to dismiss. In this action the Michigan Hospital Association ("MHA") and a number of individual hospitals (collectively, "plaintiffs"), challenge the hospital reimbursement rates set by the State under the Medicaid program pursuant to Title XIX of the Social Security Act, 42 U.S.C. § 1396, *et seq.* Plaintiffs bring their claim under 42 U.S.C. § 1983 ("section 1983 or § 1983"), the Fourteenth Amendment to the United States Constitution and various Michigan statutes and constitutional provisions. Plaintiffs contend that the Department of Health and Human Services ("HSS") and Louis Sullivan, its director ("federal defendants"), acted arbitrarily and capriciously in approving Michigan's Medicaid state plan amendments and seek a ruling that they are unlawful.[1]

### Background

■ In 1965 Congress enacted Title XIX of the Social Security Act (known as Medicaid or the Medicaid Act) to provide federal financial assistance to states providing medical assistance to needy persons. 42 U.S.C. § 1396 *et seq.* Medicaid is jointly financed with federal and state funds "and is basically administered by each state within certain broad requirements and guidelines." *West Virginia University Hospitals, Inc. v. Casey,* 885 F.2d 11 (3rd Cir.1989) (citing House Subcomm. on Health and Environment, Data on the

Medicaid Program: Eligibility, Services, Expenditures Fiscal Years 1967-77, H.R. Rep. No. 10 95th Cong., 1st Sess. 1). A state agency must be designated as the single state agency responsible for the administration of the program. The state determines the scope of the services offered and generally determines the eligibility level for the programs. *Id.* at 15. Thus, Medicaid is a federal-state joint venture in which participating states receive federal funds in return for administering a medicaid program developed by the state within the parameters established by federal law and regulations. As a cooperative federal-state program, Medicaid leaves the decision whether to participate to the sole discretion of each state. Once the decision to participate is made however, the state must comply with basic requirements imposed by federal law and regulations.

Prior to 1981, Title XIX required states to pay hospitals the "reasonable cost" of rendering inpatient hospital services to Medicaid recipients. This resulted in a form of reimbursement based on the actual costs incurred by the hospitals in providing Medicaid services. In 1981, in a cost reduction measure, Congress enacted the Boren Amendment as part of the 1981 Omnibus Budget Reconciliation Act P.L. 97-35, setting a new standard for hospital reimbursement. The Boren Amendment replaced the "reasonable cost" standard with the current standard of "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities." 42 U.S.C. § 1396a(a)(13)(A) ("Section 13A"). The Boren Amendment also reduced federal oversight of the states' reimbursement methodologies. Pursuant to Section 13A, the Secretary of HHS will approve a state reimbursement plan based on the states' satisfactory "assurances" that the plan is in compliance with federal requirements. Michigan pays for inpatient hospital services pursuant to a prospective payment system which bases

---

1. Plaintiffs also brought suit against the Michigan Department of Social Services and C. Patrick Babcock, its Director ("state defendants"). Because a similar suit against state defendants is pending in Judge Bell's court, and dismissal of the federal defendants is appropriate in the instant case, the remaining state defendants will be consolidated with the case now before Judge Bell and transferred to his court.

current payments on adjusted and updated costs from a prior period. Plaintiffs claim that because the adjustments made are insufficient, the Michigan Medicaid system renders "it impossible for an efficiently and economically operated hospital to recover its costs." Complaint, p. 3. Plaintiffs assert that the Department of Health and Human Services and Louis W. Sullivan, its secretary, are violating portions of the Medicaid Act by accepting assurances which are "arbitrary and capricious". Complaint, p. 22.

I pause here only long enough to comment on the difficulty of the task which lies ahead. In *In re Madeline Marie Nursing Homes,* the Sixth Circuit complied a few comments on the "utter complexity of the Medicaid Act." They noted that the Supreme Court has observed that "[t]he Social Security Act is among the most intricate ever drafted by Congress. Its Byzantine construction ... makes the Act 'almost unintelligible to the uninitiated.'" Further, "[t]he statute is complicated and murky, not only difficult to administer and to interpret, but a poor example to those who would like to use plain and simple expressions." 694 F.2d 433 (1982) (cites omitted). Unfortunately, neither the Boren Amendment, nor its legislative history, has helped to "clear the waters" of the Medicaid Act.

### Standard

Federal defendants have filed their motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), asserting that plaintiffs lack subject matter jurisdiction and that plaintiffs have failed to state a claim upon which relief may be granted. In reviewing a 12(b)(1) motion, the inquiry of the court is whether or not the challenged pleading sets forth allegations sufficient to show that the court has subject matter jurisdiction in the case. In making this determination, the pleadings are to be taken as true and construed in a light most favorable to the party opposing the motion. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The Court is not restricted, however, to examining only the pleadings, but may review any evidence

such as affidavits to resolve factual disputes. *E.g. Land v. Dollar,* 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947). Should the pleader allege facts from which jurisdiction may be inferred, the motion must be denied. *Mountain Fuel Supply Co. v. Johnson,* 586 F.2d 1375 (10th Cir.1978). If there are genuine issues of material facts at issue, a decision must be made on the factual questions before the motion is decided. If "the facts are relatively simple [and] substantially uncontroverted, and the law is not complex" the court may rule on a 12(b)(1) motion without pausing to make findings on disputed motions of fact. *Commodities Export Company v. U.S. Customs Service,* 888 F.2d 431, 436 (6th Cir.1989). In the case at hand, the facts are not disputed and it is unnecessary to resolve any preliminary factual questions before considering the motion. The issues the Court is asked to consider are solely legal questions.

On a Rule 12(b)(6) motion, the court must limit in inquiry to the pleadings. *See Granger v. Marek,* 583 F.2d 781, 785 (6th Cir.1978). Like a 12(b)(1) motion, the complaint must be construed liberally in plaintiff's favor, and the court must accept as true all factual allegations and permissible inferences. *Kent v. Johnson,* 821 F.2d 1220, 1223 (6th Cir.1987); *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976). The court must determine whether plaintiff's complaint sets forth sufficient allegations to establish a claim for relief. The court's task on a 12(b)(6) motion is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The complaint must in essence set forth enough information to outline the elements of a claim or to permit inferences to be drawn that these elements exist. *Jenkins v. McKeithen,* 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); *German v. Killeen,* 495 F.Supp. 822, 827 (E.D. Mich.1980). Conclusory allegations are not acceptable, however, where no facts are alleged to support the conclusion or where

the allegations are contradicted by the facts themselves. *Vermilion Foam Products Co. v. General Electric Co.,* 386 F.Supp. 255 (E.D.Mich.1974). The court cannot dismiss plaintiff's complaint unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). With these standards in mind, the court will review the motion filed by the federal defendants.

*Federal Defendants' Motion to Dismiss*

Counts III and IX of plaintiffs' complaint are directed against federal defendants. Plaintiffs contend that federal defendants violated two provisions of the Medicaid Act, 42 U.S.C. § 1316 and 1396a(a) [2] and a Federal regulation, 45 C.F.R. § 201.3(d) [3] by approving 1987 and 1988 Michigan medicaid state plan amendments establishing Michigan's method for reimbursing hospitals. Plaintiffs allege that federal defendants will violate "the same statutes and regulation if they approve the pending state plan amendments." Complaint, p. 22. The crux of the complaint against the federal defendants is plaintiffs' claim that approval of recent Michigan state plans for reimbursement of hospitals violated the Boren Amendment and approval of the pending state plan amendments will violate the Boren Amendment.

*Discussion*

■ Since it has long been settled that § 1983 does not create any cause of action against a federal defendant, *e.g. Brown v. Sibley,* 650 F.2d 760, 764 n. 4 (5th Cir.1981); *Consortium of Community Based Orgs. v. Donovan,* 530 F.Supp. 520, 535 and nn.

19–20 (E.D.Ca.1982), plaintiffs may maintain their action against the federal defendants only if a cause of action may be implied directly under the Medicaid Act. *Illinois Health Care Association v. Suter,* 719 F.Supp. 1419 (N.D.Ill.1989). I note here, that a plaintiff attempting to imply a private right of action directly under a federal statute bears a heavier burden than one attempting to establish a cause of action under § 1983. In determining whether a private right of action exists under § 1983, only two inquiries are relevant: (1) whether the statute alleged to have been violated creates a federal right in favor of the plaintiff, and (2) whether Congress has foreclosed the remedy of private enforcement. However, one attempting, as the plaintiffs are here, to imply a cause of action directly from a statute which does not explicitly supply one, must meet the four-factor analysis of *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). Under *Cort v. Ash,* four questions must be answered in favor of the plaintiff:

(1) Is plaintiff one of the class for whose *especial* benefit the statute was enacted;

(2) Is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one;

(3) Would implication of such a remedy for the plaintiff be consistent with the underlying purpose of the legislative scheme; and

(4) Would it be appropriate to infer such a cause of action solely under federal law, or is the area one traditionally relegated to state law.

Recent cases have held that the focus of the *Cort v. Ash* inquiry is rightfully on the second factor, legislative intent. *Thompson v. Thompson,* 484 U.S. 174, 179, 108 S.Ct. 513, 516, 98 L.Ed.2d 512, 520 (1988)

---

**2.** Section 1316 gives the Secretary 90 days in which to act on a State plan submitted for his approval and details a State's appeal rights should the Secretary disapprove a plan. Section 1396a contains well over 50 separate provisions relating to State plans, including the Boren Amendment (42 U.S.C. § 1396a(a)(13)(A)) which sets forth the respective roles of the State and the Secretary with respect to establishing methodology for reimbursing hospital services to Medicaid recipients.

**3.** 45 C.F.R. § 201.3(d) (1987) said that approval or disapproval of State plans for certain Federal–State cooperative programs, including Medicaid, is based upon "relevant Federal statutes and regulations." Effective October 21, 1988, this regulation was revised to discontinue its applicability to the Medicaid program. *See* 45 C.F.R. § 201.3 (1988) Note foll. § 201.3(g).

**1084**

("The intent of Congress remains the ultimate issue, however, and 'unless this congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist.'") (cites omitted). This analysis intersects with the § 1983 analysis in that the plaintiff under both analyses must establish the creation of a federal right. With respect to the existence of a remedy, however, the two analyses differ. Under *Cort v. Ash,* the plaintiff must establish that Congress intended the remedy, while under § 1983, once a federal right is established, the existence of a remedy is presumed because § 1983 itself provides the authorization for private enforcement. Under § 1983, the burden is on the defendant to establish that Congress intended to foreclose private enforcement. *West Virginia University Hospitals v. Casey,* 885 F.2d 11 (3rd Cir. 1989). Under an implied private right of action the burden is on the plaintiff to establish that Congress intended to allow a private right of action to arise from the statute itself.

### Congressional Intent

In the case at hand then, the first step in determining whether the necessary private right of action can be implied from the Medicaid Act itself is to look for Congress' intent. In discerning Congress' intent, the Supreme Court has recognized that "congressional intent does not mean that we require evidence that members of Congress actually had in mind the creation of a private cause of action ... the implied cause of action doctrine [is not] limited to correcting drafting errors [by] Congress...." Rather, "Congress' intent may appear implicitly in the language or structure of the statute, or in the circumstances of its enactment." *Thompson,* 484 U.S. at 179, 108 S.Ct. at 516, 98 L.Ed.2d at 520 (cites omitted).

Plaintiffs argue quite vehemently that an implied private cause of action against the federal defendants exists. They claim that the focus of the language of the Boren Amendment itself is a indication of Congress' intent to provide a private cause of action to hospital providers. In support of this, plaintiffs claim:

> [T]he statute's repeated references to the 'hospitals' that are to receive payment under the state plans required by § 1396a(13)(A), and its explicit requirement that hospitals must receive reimbursement that is reasonable and adequate to meet the costs they must incur are obvious indications of congressional intent that they [hospitals] were to have an enforceable right to receive that benefit.

Plaintiff's brief, p. 6. They also argue that the fact that the Medicaid Act provides no remedy whatsoever is a basis for inferring that Congress intended the Courts to recognize an implied remedy. To support this they argue that since the existence of statutorily provided remedies may be found to negate the existence of an implied private remedy, *Harris v. Adams,* 873 F.2d 929, 931–932 n. 2 (6th Cir.1989), the converse should be true, and the absence of any remedies should provide the basis for inferring an implied right of action.

■ I find these particular arguments by plaintiff to be unpersuasive. Repeated inferences are not illustrative of Congressional intent. Repeated references to hospitals arise out of necessity in a statute which deals with hospital reimbursement plans. Nor does plaintiffs' "opposites" theory imply Congressional intent to imply a private cause of action against the federal defendants. The fallacy of plaintiffs' argument lies in their attempt to use the negative to prove the positive. Because a private cause of action may not exist when a statute provides a remedy, does not prove that a cause of action does exist when Congress does not provide a remedy.

■ Plaintiffs also argue quite extensively that the legislative history of the Boren Amendment supports a finding of an implied cause of action. Plaintiffs assert that the changes wrought in federal oversight by the Boren Amendment were meant to "focus the Secretary's attention where it belongs, on evaluating the end

result, the quality of care ..." Plaintiff's Brief, pp. 12–13, quoting Senator Boren's remarks found in 126 Cong. Rec. § 8926–7. They claim that Senator Boren's remarks reflect the fact that he saw future federal involvement in the Medicaid reimbursement methods as *more meaningful*, not less.

I cannot agree with plaintiffs. Regardless of what Senator Boren may have said or meant (which I do not think is easily established), the statute itself reflects, among other things, Congressional intent that "assurances made by the States ... be considered satisfactory in the absence of a formal finding to the contrary by the Secretary" by providing that a plan be deemed approved if not acted on within ninety days of submission. Sen. Rep. No. 96–471, 96th Cong., 1st Sess. at 29 (1979); *see* 42 U.S.C. § 1396n(f)(2). It seems self-evident that the Boren Amendment provides for a very limited, minimal review by the federal defendants. As the court observed in *Virginia Hospital Assoc. v. Baliles*, 868 F.2d 653, 659 (4th Cir.1989):

> The legislative history [of the Boren amendment] also indicates that Congress intended no close scrutiny by the Secretary of [a State's] assurances of compliance with the mandates of § 1396a(a)(13)(A).

Likewise in apparently the only case to have considered this specific issue,[4] *Illinois Health Care*, 719 F.Supp. 1419, Judge Shadur of the United States District Court for the Northern District of Illinois held that a private right of action against the Secretary did not exist under the Medicaid Act. Faced with many of the same arguments that I have before me, Judge Shadur noted:

> To imply a private right of action against [the] Secretary would require more than the anticipated limited degree of oversight envisioned for [the] Secretary. After all, a congressional expectation that [the] Secretary's promulgation of "regulatory and other requirements" would be kept at the "minimum necessary" level

hardly signals an invitation to private parties to sue [the] Secretary for not conducting a chapter and verse inquiry into the facts underlying a State's assurances. *Id.* at 1424.

The *Illinois Health Care* court also drew a comparison with the case of *Davis v. Ball Memorial Hospital Association*, 640 F.2d 30, 45 (7th Cir.1980). In *Davis*, indigent plaintiffs brought suit against the secretary of Health Education and Welfare and state defendants under the Hill–Burton Act which provides federal assistance for the construction and modernization of medical facilities nationwide. Like Medicaid, the Hill–Burton Act requires, as a condition of receiving funds under the program, that each facility give "assurances" that it will provide "a reasonable volume of services to persons unable to pay therefor." 42 U.S.C. § 291c(e). The Court dismissed the suit against the Secretary, noting:

> It is one thing to make the patients the direct beneficiaries of the assurances, quite another to give them an immediate interest in the particulars of federal enforcement and administration, which serves the public at large. Put more simply, the interests implicated by an action to compel local compliance with the assurances are different from those implicated by a suit to compel specific action by the Secretary to compel the facilities to comply. *Illinois Health Care*, 719 F.Supp. at 1424 citing *Ball Memorial*, 640 F.2d at 45.

In *Gillis v. United States Dept. of Health and Human Services*, 759 F.2d 565, 574 (6th Cir.1985), the Sixth Circuit Court of Appeals followed *Ball Memorial*, praising its analysis as persuasive, and noting that *Ball Memorial* "... emphasized that implying a private right of action to compel a federal agency to enforce provisions of an Act resembling [the Hill–Burton Act] would allow individuals to circumvent the procedural limitations of the legislative

---

4. Plaintiff urges the Court to consider the fact that cases against the Secretary have been considered under the Boren Amendment. However, a review of the cases cited by plaintiff reveals that none of the courts addressed the question of what authority exists for entertaining a suit against the Secretary, or ever analyzed the basis for federal court subject matter jurisdiction. *Illinois Health Care* is the only case ever to squarely consider the issue at hand.

enactment." citing *Ball Memorial*, 640 F.2d at 46.

Plaintiffs urge me not to follow the lead of *Illinois Health Care*, pointing to a recent decision in *Folden v. Washington State Department of Social & Health Services*, No. C87–802TB 1989 WL 159586 (W.D.Wash.1989) which holds that a private cause of action against a state arises under the Boren Amendment. However, I find *Folden* much less persuasive that *Illinois Health Care*. *Folden* holds only that a cause of action arises against a *state*, not the Secretary of HHS, or HHS itself, and *Folden* bases this holding on a reading of the recent Supreme Court case *Will v. Michigan Dept. of State Police*, ⸻ U.S. ⸻, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) which narrows the application of § 1983 to prospective relief. I do not find this persuasive on the issue at hand; I am not deciding the question of whether a private cause of action against a state arises under the Medicaid Act, but am deciding if one can be implied against the federal defendants, two very separate questions.

Because I find that plaintiffs have failed to meet the requirements of the second factor of the *Cort v. Ash* test, that is, to show that Congress intended a private right of action against the federal defendants, I need not consider the other factors. The lack of Congressional intent alone is enough to find that this Court lacks subject matter jurisdiction. I need not consider the arguments presented by both sides on the issues of standing and ripeness. Accordingly, federal defendants' motion for dismissal for lack of subject matter is granted and this case against the Department of Health and Human Services and Louis B. Sullivan is dismissed.

### ORDER

In accordance with the opinion entered this date;

IT IS HEREBY ORDERED that federal defendants' motion for dismissal of the Department of Health and Human Services and Louis Sullivan, its Director, is GRANTED and they are DISMISSED as parties to this action;

IT IS FURTHER ORDERED that plaintiffs' remaining case against the Michigan Department of Social Services and C. Patrick Babcock shall be consolidated with *Health Care Association of Michigan v. Dept. of Social Services*, K89–50063 now pending in Judge Bell's court.