**ILLINOIS HOSPITAL ASSOCIATION, et al., Plaintiffs,**

v.

**Jim EDGAR, in his official capacity as Governor of the State of Illinois, et al., Defendants.**

No. 90 C 6394.

United States District Court, N.D. Illinois, E.D.

April 26, 1991.

**1344**

James J. Casey, Lawrence A. Manson, Dorothy Voss Ward, Keck, Mahin & Cate, Chicago, Ill., Mark D. Deaton, Illinois Hosp. Ass'n, Naperville, Ill., for plaintiffs.

James C. O'Connell, Owen M. Field, Illinois Atty. General's Office, Chicago, Ill., for defendants James R. Thompson and Kathleen B. Kustra.

Linda A. Wawzenski, U.S. Atty.'s Office, Chicago, Ill. (Donna Morros Weinstein, Chief Counsel, Barbara F. Altman, Asst. Regional Counsel, Dept. of Health & Human Services, Chicago, Ill., of counsel), for defendant Louis R. Sullivan, M.D.

## MEMORANDUM OPINION

KOCORAS, District Judge:

This matter is before the court on the defendants' motions to dismiss for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted. For the reasons set forth below, the federal defendant's motion is granted in full while the state defendant's motion is granted in part and denied in part.

## BACKGROUND

The plaintiffs in this suit are the Illinois Hospital Association ("IHA") and three of its member hospitals. The plaintiffs are attempting to challenge various parts of the Illinois Medicaid reimbursement system. The defendants are the Secretary of the Department of Health and Human Services ("Secretary" or "the federal defendant"), and the Director of the Illinois Department of Public Aid ("IDPA") and the Governor of Illinois (collectively "the state defendants"). The defendants have separately moved to dismiss the complaints against them.

### A. Federal Statutory Provisions

Medicaid is a cooperative federal-state program through which the Federal Government and states provide roughly matching funds to pay the cost of medical services for needy individuals. 42 U.S.C. § 1396 et seq. The medical services covered under the Act include inpatient and outpatient care. 42 U.S.C. § 1396d(a)(1), (2)(A). To qualify for federal assistance, a state must develop a plan which meets the rate setting and other requirements of § 1396a. Those requirements include a guarantee that Medicaid recipients will have equal access to care and services. 42 U.S.C. § 1396a(a)(23) (plan must provide that "any individual eligible for medical assistance ... may obtain such assistance from any institution ... qualified to perform the service ... who undertakes to provide him such services"). The states are also required to establish methods and procedures related to the utilization of and payment for care and services available under the plan "to ... assure that payments are consistent with efficiency, economy, and quality of care." 42 U.S.C. § 1396a(a)(30).

Prior to October 1, 1981, the reimbursement rates promulgated by the states had to satisfy the "reasonable cost" standard set by the Secretary. Reimbursement rates for outpatient care and other services were left to state determination. S.Rep. No. 97–139, 97th Cong. 1st Sess., U.S.Code Cong. & Ad. News 396, 739 (1981). In

1981, however, Congress amended the Act in such a way that the burden of developing acceptable rates shifted to the states. Specifically this amendment, known as the Boren Amendment, requires state plans to provide

> for payment ... of the hospital, skilled nursing facility, and intermediate care facility services provided under the plan through the use of rates ... which the State finds, and makes assurances satisfactory to the Secretary, are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to ... assure that individuals eligible for medical assistance have reasonable access to inpatient hospital services of adequate quality.

42 U.S.C. § 1396a(a)(13)(A). The methods and standards used to assess the applicable rate must take into account the situation of hospitals that either serve a disproportionately large number of Medicaid recipients or provide an inappropriate level of care to Medicaid recipients. 42 U.S.C. § 1396a(a)(13)(A).

Along with the Boren Amendment Congress added to the Act a waiver provision which in certain circumstances excuses states from having to satisfy all requirements of § 1396a. To qualify for a waiver, a state must develop alternative regulatory schemes aimed at lowering the cost of medical assistance while at the same time maintaining the level of care. The waiver provision states in part that

> (b) The Secretary, to the extent he finds it to be cost-effective and efficient and not inconsistent with the purposes of [the Act], may waive such requirements of section 1396a ... as may be necessary for a State—
>> (4) to restrict the provider from (or through) whom an individual ... can obtain services ... to providers ... who undertake to provide such services and who meet, accept and comply with the reimbursement, quality, and utilization standards under the State plan.

42 U.S.C. § 1396n(b)(4). The "reimbursement, quality, and utilization standards" must be "consistent with access, quality, and efficient and economic provision of covered care and services," and may "not discriminate among classes of providers on grounds unrelated to their demonstrated effectiveness and efficiency in providing those services." *Id.*

These amendments were enacted as part of the Omnibus Budget Reconciliation Act of 1981 in hopes that their implementation would lead to a reduction in federal expenditures on Medicaid. H.R.Rep. No. 97–158, 97th Cong., 1st Sess., *reprinted in* Medicare & Medicaid Guide (CCH), No. 328 at 5. Congress had found that the price paid by states for services given to Medicaid recipients was frequently higher than the average market price for identical services provided to private consumers. Congress believed that the rigidity of the reasonable cost standard imposed by the Secretary prevented the states from securing health services in the most economic and efficient manner. S.Rep. No. 97–139, 97th Cong. 1st Sess., U.S.Code Cong. & Ad. News 396, 739 (1981). By decreasing the Secretary's regulatory role, the amendments were expected to afford states "greater latitude in the development and implementation of alternative reimbursement methodologies that promote the efficient and economical delivery of [inpatient] services." H.R.Rep. No. 97–158, reprinted in Medicare & Medicaid Guide at 9.

**B. State Implementation**

The Medicaid scheme implemented in Illinois consists of a noncontracting method established pursuant to § 1396a and a contracting method created by virtue of the Secretary's waiver of several § 1396a requirements. This suit challenges the substance and methodology of both programs (Counts I, II and IV), and the waiver of several § 1396a requirements granted by the Secretary for the implementation of the contracting program (Count III).

The noncontracting rate payment methodology currently in effect was promulgated by IDPA in July 1989. Under this

system hospitals are divided into five peer groups based on the range of different services provided to Medicaid recipients. The reimbursement rate applied to each hospital is currently determined by tracing the cost inflation experienced by the relevant peer group between 1984 and the rate year. The plaintiffs allege that in implementing the group methodology, IDPA failed (1) to consider the complexity, cost, or frequency of the services provided by each hospital, and (2) to conduct the studies and empirical validation allegedly necessary to make the "findings" and "assurances" required by the Boren Amendment. Use of this methodology has purportedly harmed at least one hospital in that the reimbursement payments received by that hospital fell approximately 10% short of the allowable costs it incurred. Based on these allegations, the plaintiffs argue in Count I that the group methodology fails to satisfy the requirements set forth in § 1396a(a)(13)(A), (a)(30), and (a)(23) in violation of 42 U.S.C. § 1983.

In Count II, the plaintiffs state that Illinois adopted a contracting system, the "ICARE program," in 1984 in an attempt to control the rising Medicaid costs through competitive bidding. Under the ICARE program, a hospital that successfully bids for a contract will receive payment from IDPA at a specified rate for a specified number of inpatient days and types of care. The IDPA has obtained successive waivers from the Secretary in order to obtain federal funds for the operation of the ICARE program. Plaintiffs allege that in obtaining a waiver in 1989, IDPA misrepresented the hardships brought on by the ICARE program and failed to accurately describe the program.

The plaintiffs also claim that hospitals have little choice but to participate in this program and for the most part have little bargaining power. Allegedly because of this relatively weak position, a majority of IHA's members participating in the ICARE program sign a form contract setting reimbursement rates that are even lower than the allegedly unlawful noncontracting rates challenged in Count I. The plaintiffs assert that the system is particularly un-fair to disproportionate share hospitals (those that serve a large number of Medicaid patients) which could not survive financially without a contract. Based on these allegations, the plaintiffs contend that the ICARE contracts are unconscionable.

In Count III the plaintiffs claim that the Secretary exceeded his authority under 42 U.S.C. § 1396n(b)(4) by waiving more of the § 1396a requirements than necessary for implementation of the ICARE program. The plaintiffs further contend that the waivers contemplated by Congress were not intended to be applied to entire statewide programs, that before granting such waivers the Secretary is supposed to make meaningful inquiry into the state's proposed plan, and that the grant of a waiver does not relieve the state of the obligation to satisfy the Act's quality and access to service standards. The plaintiffs argue that the Secretary's failure to enforce these restrictions is violative of the Medicaid Act.

Count IV involves the reimbursement rates applicable to outpatient and clinical services in Illinois. According to the plaintiffs, such rates bear no relationship to the costs incurred by efficient and economical hospitals in the provision of these types of services. Therefore, the plaintiffs argue, the state's method of setting the reimbursement rates for outpatient and clinical services violates the Boren Amendment standards and 42 U.S.C. § 1396a(a)(30).

C. Previous Litigation

IDPA has from time to time unilaterally increased the payment cycle (i.e., slowed down the payments) for reimbursing hospitals. A unilateral increase in the payment cycle applied to the ICARE program was the subject of a suit filed by IHA and two Medicaid recipients in 1988. In *Chicago Osteopathic Medical Centers v. Duffy*, No. 88 C 1174, Memorandum Opinion and Order, 1989 WL 135234 (N.D.Ill. October 27, 1989), Judge Leinenweber held that the unilateral action taken by the IDPA was valid, and that if the hospitals wished to lessen the risk of untimely payment, they could do

so by contract. The plaintiffs assert in this action that if IDPA maintains a 30 day payment cycle, the 1991 fiscal year appropriations will be exhausted roughly eight weeks before the end of the fiscal year.

## LEGAL STANDARD

On a motion to dismiss the court's inquiry is limited to the sufficiency of the facts alleged in the complaint. The court must accept as true the allegations of the complaint, and draw all reasonable inferences in favor of the plaintiffs. *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985). The case may be dismissed only if it appears beyond doubt that the plaintiffs will be unable to prove any set of facts entitling them to relief. *Conley v. Gibson,* 355 U.S. 41, 45-6, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957).

## DISCUSSION

A. The State Defendants' Motion to Dismiss

The plaintiffs charge the state defendants with establishing and implementing a Medicaid plan that does not comply with §§ 1396a(a)(13), (a)(23), (a)(30), and 1396n(b)(4) in violation of the plaintiffs' rights under 42 U.S.C. § 1983. The state defendants move for dismissal on the grounds that the action is barred by res judicata, that the plaintiffs do not have a right of action under the asserted provisions, and that outpatient services are not covered under 42 U.S.C. §§ 1396a(a)(13)(A) and 1396a(a)(30).

1. *Res Judicata*

The doctrine of res judicata is founded on the notion that a right, question or fact put in issue and determined by a court of competent jurisdiction cannot be disputed in a later suit between the same parties or their privities. *Diaz v. City of Chicago,* 601 F.Supp. 1251, 1252 (N.D.Ill.1984). The purpose of the doctrine is to save the parties the cost and vexation of multiple lawsuits, conserve judicial resources and, by preventing inconsistent decisions, encourage reliance on adjudication. *Montana v. United*

*States,* 440 U.S. 147, 153-4, 99 S.Ct. 970, 973-74, 59 L.Ed.2d 210 (1979); *Diaz,* 601 F.Supp. at 1252. The doctrine applies when there is (1) a final judgment on the merits in an earlier action; (2) an identity of the cause of action in both earlier and later suits; and (3) an identity of parties or their privities in the two suits. *NAACP v. Hunt,* 891 F.2d 1555, 1560 (11th Cir.1990); *Mandarino v. Pollard,* 718 F.2d 845, 849 (7th Cir.1983). In this instance the parties dispute the existence of the second element, identity of the cause of action.

 There is identity in the cause of action if the claims made in the second suit were or could have been raised in the prior action. *Car Carriers, Inc. v. Ford Motor Co.,* 789 F.2d 589, 593 (7th Cir.1986). The Seventh Circuit takes a transactional approach to this test, and in so doing has expressly rejected approaches that look for an identity of the rights and duties or of legal theories being litigated. *Matter of Energy Co-op., Inc. ("ECI"),* 814 F.2d 1226, 1231 n. 6 and accompanying text (7th Cir.1987); *Car Carriers, Inc. v. Ford Motor Co.,* 789 F.2d at 593. Pursuant to the Seventh Circuit approach, "[o]nce a transaction has caused injury, all claims arising from that transaction must be brought in one suit or be lost." *Car Carriers,* 789 F.2d at 593. In other words, where legal bases for injury alleged in each suit rely on the same core of operative facts, the res judicata doctrine will bar the second suit. *Car Carriers,* 789 F.2d at 593.

The 1988 complaint charged the state agency with obtaining a waiver for ICARE based on inappropriate statutory authority. The core of operative facts in that litigation was the state's unilateral slowdown in payments beyond the agreed 30 day billing cycle and the imminent exhaustion of appropriated funds which allegedly would result in a reduction or cessation of Medicaid services. In conformity to the transaction approach, any of the claims made by the plaintiffs in the present action which were or could have been raised based on these facts are barred by res judicata. *See Spiegel v. Continental Illinois National Bank,* 790 F.2d 638, 646 (7th Cir.1986),

*cert. denied,* 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986) (to the extent that the second suit alleges facts occurring after the filing of the first suit, the second suit is not barred by res judicata).

### a. Count I

Count I challenges the non-ICARE rate setting methodology. The operative facts on this count appear to be the alleged failure to conduct empirical studies before adopting the grouping methodology with the result that the system is unrelated to the costs of providing efficient, quality care. Such allegations suggest an entirely different transaction from the unilateral slowdown challenged in the 1988 lawsuit, and consequently are not barred by res judicata.

However, in connection with these allegations, the plaintiffs have referred back to the increase in payment cycles litigated in the 1988 action and to the disparity between the costs and reimbursements that have existed since 1986. We understand such references to constitute merely background information which aids in the explanation of the alleged hardships that the plaintiffs currently suffer, which do not call for dismissal of this action on res judicata grounds. The parties should take note, however, that to the extent that the interests of the parties with respect to these facts were litigated in the 1988 action, they may not be revisited here.

### b. Count II

Count II challenges ICARE based on (1) the unconscionability of the contracts signed by the plaintiffs and (2) the misrepresentations allegedly made by IDPA in obtaining the 1989 waiver of the § 1396a requirements. The corresponding operative facts appear to be (1) inadequate reimbursements allegedly resulting from the state-provider bargaining process and (2) misrepresentations allegedly made by the state agency. In deciding that the state's slowdown in payments was permitted under the statute, Judge Leinenweber stated that "[i]f the providers seek to reallocate this risk [of untimely payment] in a more favorable fashion they may do so by agreement." *Chicago Osteopathic Medical Centers v. Duffy,* No. 88 C 1174, Memorandum Opinion and Order at 7 (N.D.Ill. October 27, 1989). The plaintiffs' claims of unconscionability appear to be a collateral objection to Judge Leinenweber's holding which could and should have been raised in the earlier proceedings. The plaintiffs have not alleged any facts tending to show that the bargaining process has changed since Judge Leinenweber's resolution of the 1988 litigation. Thus the plaintiffs' allegations of unconscionability arise from the same transaction underlying the 1988 litigation. Accordingly, inasmuch as Count II challenges the burden of inadequate payments resulting from bargains made under the ICARE program, the count is barred.

The alleged misrepresentations contained in the state's waiver request are an entirely different matter involving a transaction that is distinct from the transaction involved in the earlier litigation. Therefore, Count II remains viable to the extent that the plaintiffs seek a declaration that the waiver was obtained in violation of the Medicaid Act.

### c. Count IV

The 1988 suit did not challenge the state's method of reimbursing outpatient/clinic services, and this issue appears unrelated to the payment slowdown that formed the basis of the 1988 litigation. Thus, the res judicata doctrine will not bar any viable issue raised in Count IV.

### 2. *Enforceable Right*

The plaintiffs' unbarred claims against the state defendants are based on 42 U.S.C. §§ 1396a(a)(13)(A), (a)(30), (a)(23), 1396n(b)(4) and 42 U.S.C. § 1983. The state defendants contend that health care providers do not have a right of action under these provisions.

In *Wilder* the Supreme Court addressed the issue of whether hospitals had a right of action under § 1983 against the state agency for violations of the Boren Amendment. The Court stated that resolution of the issue turns on whether the Medicaid provision was intended to benefit the plain-

tiff. *Wilder v. Virginia Hospital Associa-tion,* — U.S. —, 110 S.Ct. 2510, 2517, 110 L.Ed.2d 455 (1990). Noting that this inquiry differs from that involved in determining whether a private right of action can be implied from a particular provision, the Court held that the "Medicaid Act creates a right enforceable by health care providers under § 1983 to the adoption of reimbursement rates that are reasonable and adequate to meet the costs of an efficiently and economically operated facility that provides care to Medicaid patients." *Id.* In reaching this conclusion, the Court emphasized that the Boren Amendment placed a binding obligation on states to adopt reasonable and adequate rates, that this obligation was cast in mandatory rather than precatory terms, and that the provision of federal funds was expressly conditioned on the state's compliance with the Boren Amendment and all other requirements of § 1396a. *Id.* at 2518–19.

The defendants have not persuaded us that a departure from *Wilder* is merited by the facts in this case. Thus our analysis here will be limited to a determination of whether the other provisions cited in the complaint will also give the plaintiffs an enforceable right against the state defendants.

### a. § 1396a(a)(30)

▮ The Boren Amendment requires the state defendants to adopt reimbursement rates that are reasonable and adequate to meet the costs of an efficiently and economically run facility that provides quality care to Medicaid patients. Section 1396a(a)(30) appears to complement the Boren Amendment by requiring state plans to provide "such methods and procedures relating to the utilization and payment for care and services ... as may be necessary to ... assure that payments are consistent with efficiency, economy, and quality of care." 42 U.S.C. § 1396a(a)(30). Thus, just as the plaintiffs are intended to benefit from the states' satisfaction of the standards of the Boren Amendment, it seems that they are intended to derive benefit from the state defendants' performance of their obligations under subsection (a)(30).

Furthermore, subsection (a)(30) is cast in mandatory as opposed to precatory terms and constitutes a precondition for federal financial participation. Thus, we find that the plaintiffs may bring a § 1983 action against the state defendants for injuries resulting from the state defendants' failure to develop appropriate methods and procedures relating to the payment of outpatient services pursuant to 42 U.S.C. § 1396a(a)(30).

### b. § 1396n(b)(4)

Although the plaintiffs have characterized their surviving Count II allegations in terms of a violation of the waiver provision, what they actually allege is a putative violation of the Boren Amendment caused by the state defendants' improper acquisition of a waiver. Cast in this light, it is unnecessary to determine whether the waiver provision itself gives the health care providers an enforceable right.

### c. Coverage of Outpatient Services

The defendants have not attempted to argue that (30)(A) covers only inpatient services. Because plaintiffs have an enforceable right under that subsection, Count IV is viable regardless of whether the Boren Amendment is interpreted as being limited to inpatient services or to extend also to outpatient services. Thus, this latter question need not be resolved at this stage.

### B. Federal Defendant's Motion to Dismiss

▮ Count III asks this court to declare that the federal defendant violated § 1396n(b)(4) and the Boren Amendment by granting the waiver for the ICARE program. The federal defendant has moved to dismiss this count on the grounds that the plaintiffs lack both a right of action against the Secretary and standing to challenge the Secretary's grant of a waiver under § 1396n(b)(4).

Since § 1983 does not create a cause of action against a federal defendant, Count III may stand only if a cause of action may be implied directly under the Medicaid Act. *Michigan Hospital Association v. Department of Social Services,* 738 F.Supp. 1080, 1083 (W.D.Mich.1990). There is a strong

presumption against implying a private right of action, *Illinois Health Care Association v. Suter,* 719 F.Supp. 1419, 1423 (N.D.Ill.1989), and the plaintiff bears a heavy burden in showing such implication is appropriate.

For a private right of action to be implied, four questions must be answered in favor of the plaintiff:

1. Is the plaintiff a member of the class for whose *especial* benefit the statute was enacted?

2. Is there any indication of legislative intent, implicit or explicit, to create or deny such a remedy?

3. Is the implication of such a remedy consistent with the underlying purposes of the legislative scheme?

4. Is the cause of action sought to be implied in an area not traditionally relegated to state law?

*Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975); *Wilder,* 110 S.Ct. at 2517 n. 9; *Illinois Health Care,* 719 F.Supp. at 1423; *Michigan Hospital Association,* 738 F.Supp. at 1083 (emphasis in originals). The principal focus of this inquiry is on the second of the *Cort* factors: the intent of the legislature. *See Wilder,* 110 S.Ct. at 2517 n. 9. The first and third factors are aids in determining that intent. *Illinois Health Care,* 719 F.Supp. at 1423. The fourth factor is of questionable importance. *Id.* In short, "unless a congressional intent to create the right of action 'can be inferred from the language of the statute, the statutory structure, or some other source [such as the legislative history], the essential predicate for implication of a private remedy simply does not exist.'" *Id.,* quoting *Northwest Airlines, Inc. v. Transport Workers Union,* 451 U.S. 77, 94, 101 S.Ct. 1571, 1582, 67 L.Ed.2d 750 (1981).

The federal defendant points to *Illinois Health Care Association* and *Michigan Hospital Association* as authority for holding that no right of action may be implied from the waiver provision. The plaintiffs in both cases charged the Secretary with arbitrary and capricious approval of the states' Medicaid plans in violation of the Boren Amendment. The courts in those cases took a provision specific approach to the *Cort* test. Focusing on the history and language of the Boren Amendment, the courts determined that the underlying congressional intent was to limit the Secretary's involvement in assuring the states' compliance with the Medicaid Act. Because the plaintiffs' interpretation of the Secretary's duty would enmesh the federal defendant in the details of the states' compliance with the Act, the courts held that a private cause of action could not be implied under the Boren Amendment. *Illinois Health Care Association,* 719 F.Supp. at 1424; *Michigan Hospital Association,* 738 F.Supp. at 1085. These cases provide guidance for this courts' resolution of the same issue with respect to the waiver provision.

The plaintiffs urge a construction of the statutory provisions that would indicate an intent on the part of Congress to give health care providers a right of action against the federal defendant under the waiver provision. The plaintiffs admit that the Boren Amendment was intended to limit the Secretary's traditional involvement in state rate setting systems while at the same time transferring the binding obligation for the establishment of such systems to the states. However, the plaintiffs argue, Congress intended to preserve the Secretary's detailed participation in special situations in which the states were allowed to stray from the requirements of 1396a and experiment with alternate payment strategies. In so doing, the argument goes, Congress unambiguously intended to impose an enforceable obligation on the Secretary to "find" that the requested waiver would be cost-effective, efficient, not inconsistent with the purposes of the Act, and necessary to enable the states to exclude providers that furnished unnecessary services to Medicaid recipients.

To support this claim, the plaintiffs rely on the Supreme Court's interpretation of "findings" in *Wilder.* The Supreme Court read the Boren Amendment's mandate that states provide for payments at rates which the state finds and assures are reasonable and adequate to confer an enforceable

right on health care providers to sue the states under § 1983. The plaintiffs argue that a similar interpretation must be placed on the waiver provision to give them a right of action against the Secretary. We disagree.

*Wilder*'s enforceable right analysis is of little help in this matter. As the Supreme Court noted, the enforceable right inquiry, grounded as it is on § 1983's express congressional authorization of private actions, is distinct from the question of whether a right of action may be implied from a particular statute. *Wilder*, 110 S.Ct. at 2517, n. 9. The plaintiff's burden is relatively light in a § 1983 action: the plaintiff is permitted to sue unless it is shown that the statute either was not intended to benefit the plaintiff or contains a provision foreclosing private enforcement. *Id* at 2517. The presumption in an implied right of action, on the other hand, is heavily against the putative plaintiff. *Illinois Health Care Association v. Suter*, 719 F.Supp. at 1423. Thus, even if § 1396n(b)(4) met the *Wilder* test, it would not necessarily follow that it satisfies the right of action requirement necessary to invoke subject matter jurisdiction.

In addition, there is an important difference in the language used by Congress in imposing the finding and assurances duties on states and the more precatory terms of the Secretary's obligations under the waiver provision. *Contrast* 42 U.S.C. § 1396a(a)(13)(A) (the state plan "must" "provide for payment") *with* 42 U.S.C. § 1396n(b)(4) (the Secretary "may" waive requirements). While the waiver provision constitutes more that a "mere suggestion or nudge," it falls somewhat short of the binding obligation which the Supreme Court held to be imposed on the states by the Boren Amendment. Thus, we are unable to hold based on the language of the waiver provision alone that Congress intended to preserve the enforceable duty of detailed involvement which several courts had found to exist on the part of the Secretary prior to the enactment of OBRA 1981. The plaintiffs' position gains somewhat better support from an amendment to the waiver provision that has become effective

since the filing of this suit. Congress has long had particular concern for at least a subgroup of health care providers: disproportionate share hospitals. This concern was expressed in the legislative history underlying the 1981 OBRA amendments and is embodied in the 1991 amendment insofar as any waivered program must provide for the establishment of reimbursement rates in such a way as to reflect the special needs of disproportionate share hospitals. *See* 42 U.S.C. §§ 1396n(b)(4), 1396r–4(a)(1). However, because the waiver provision contemplates a reduction in the number of health care providers that are able to participate in the program, the support the plaintiffs receive from this amendment is not overwhelming.

The Boren Amendment and waiver provisions seem more appropriately read together as an attempt by Congress to reduce federal expenditures by moving away from detailed federal regulation of state Medicaid programs. Part of OBRA 1981, the amendments were intended to shift primary responsibility for the development of Medicaid programs and payment rate systems from the Secretary to the states. The rationale was that, by giving states greater flexibility they would be able to develop alternative systems that would be more effective in containing costs. The amendments and the legislative history expressly acknowledge that some health care providers might be excluded from participation in the alternative systems and appear to give priority to the states' need for greater flexibility (and the corresponding reduction in federal participation) over the interests of health care providers. *See* H.R.Rep No. 97–158 at 307.

The waiver provision fits into this scheme by affording states flexibility in preventing abuses of the Medicaid program by recipients and providers. H.R.Rep. No. 97–158, 97th Cong., 1st Sess. (1981). The provision allows the states to save money by developing an alternative compensation system where doing so would not make providers and recipients worse off. *Chicago Osteopathic Medical Centers v. Duffy*, No 88 C 1174, Memorandum Opinion and

Order at 6–7 (N.D.Ill. October 27, 1989). To implement such a system the states must develop a plan indicating the provisions to be waived and obtain the approval of the Secretary. The Secretary, in turn, "may" grant the waiver provided he "finds" that § 1396n(b)(4) standards are met. Regardless of how detailed a review the Secretary is required to conduct under this provision, we have found no authority for the proposition that Congress intended even a partial return to the inflexible system that existed prior to 1981. As such a return seems contrary to the intent expressed in the legislative history and by the amendments themselves, the plaintiffs' arguments must be rejected.

The plaintiffs have not submitted sufficient authority to satisfy the second and third *Cort* factors. It is therefore unnecessary to determine whether the plaintiffs are part of a class for whose especial benefit the waiver provision was enacted. Under such circumstances, we find that the plaintiffs have failed to submit sufficient authority to overcome the presumption against implying a private right of action against the federal government. Accordingly, Count III is dismissed for want of subject-matter jurisdiction.