USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT  ____________________ No. 95-1849 VISITING NURSE ASSOCIATION OF NORTH SHORE, INC., ET AL., Plaintiffs, Appellees, v. BRUCE M. BULLEN, ET AL., Defendants, Appellants.  ____________________ No. 95-1999 VISITING NURSE ASSOCIATION OF NORTH SHORE, INC., ET AL., Plaintiffs, Appellants, v. BRUCE M. BULLEN, ET AL., Defendants, Appellees.  ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Nancy Gertner, U.S. District Judge] ___________________  ____________________ Cyr, Boudin and Stahl, Circuit Judges. ______________  ____________________ Douglas H. Wilkins, Assistant Attorney General, with whom Scott __________________ _____ Harshbarger, Attorney General, and William L. Pardee, Assistant ___________ ___________________ Attorney General, were on brief for appellants Bullen, et al. Richard P. Ward, with whom John H. Mason, Susan T. Nicholson and _______________ _____________ __________________ Ropes & Gray were on brief for appellees Visiting Nurse Association of ____________ North Shore, Inc., et al.  ____________________ August 22, 1996  ____________________ 2 CYR, Circuit Judge. Nine Massachusetts health care CYR, Circuit Judge. _____________ providers initiated this civil rights action under 42 U.S.C.  1983, alleging substantive and procedural violations of the Medicaid Act, see 42 U.S.C. 1396a(a)(30) ("Act"), by the named ___ defendants, various officials of the Massachusetts Medicaid program. The district court granted partial summary judgment for plaintiffs, declaring defendants in noncompliance with certain procedural requirements relating to the establishment of reimbursement rates for health care services provided to Medicaid recipients. Defendants appealed. Plaintiffs cross-appealed a district court ruling dismissing their remaining claims. We reverse the district court judgment against defendants and dismiss the cross-appeal. I I BACKGROUND BACKGROUND __________ Medicaid is a joint federal-state program designed to afford medical benefits to low-income individuals. See 42 U.S.C. ___ 1396 et seq.; Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 502 __ ___ ______ ____________________ (1990). A State which elects to participate in Medicaid is eligible to receive federal funds only if its State Plan is approved by the Federal Health Care Financing Administration ("HCFA").1 Among the sixty-two criteria for HCFA approval, see ___  ____________________ 1Authority to administer the Medicaid program and promulgate implementing regulations has been delegated to HCFA, a constituent agency of the Department of Health and Human Services. See 42 U.S.C. 1302; 49 Fed. Reg. 35,247, 35,249 ___ (1984); see also Elizabeth Blackwell Health Ctr. for Women v. ___ ____ ___________________________________________ Knoll, 61 F.3d 170, 174 (3d Cir. 1995), cert. denied, 116 S. Ct. _____ _____ ______ 816 (1996). 3 42 U.S.C. 1396a(a)(1)-(62), is the so-called "equal access" clause: [A State plan for medical assistance must] provide such methods and procedures relating _______ ___ __________ to the utilization of, and the payment for, care and services available under the plan (including but not limited to utilization re- view plans as provided for in section 1396b (i)(4) of this title) as may be necessary to safeguard against unnecessary utilization of such care and services and to assure that __ ______ ____ payments are consistent with efficiency, ________ economy, and quality of care and are suffi- ___ ______ cient to enlist enough providers so that care _____ __ ______ ______ _________ __ ____ ____ and services are available under the plan at ___ ________ ___ _________ _____ ___ ____ __ least to the extent that such care and ser- _____ __ ___ ______ ____ ____ ____ ___ ____ vices are available to the general population _____ ___ _________ __ ___ _______ __________ in the geographic area. __ ___ __________ ____ Id. 1396a(a)(30) (emphasis added); 42 C.F.R. 447.201(b) ("The ___ plan must describe the policy and the methods to be used in setting payment rates for each type of service . . . .").  Massachusetts establishes its reimbursement rates through the Massachusetts Rate Setting Commission, with the approval of the Division of Medical Assistance of the Massachu- setts Executive Office of Health and Human Services ("DMA"). See ___ Mass. Gen. L. ch. 6A, 32, 36. Before 1991, Massachusetts used a "cost-based" methodology for setting reimbursement rates, laconically described in its approved plan as "fixed negotiated fee schedules." Ostensibly, the term "negotiated" connoted an intent to calculate a different rate for each individual health ____ care provider, based on its reported costs for delivering five different categories of medical services (skilled nursing, occupational, physical and speech therapy, and home-health-aide services) during the preceding fiscal year, adjusted for such 4 uniform factors as inflation and allowing for incentive caps (e.g., to promote efficiency). See Mass. Regs. Code tit. 114.3, ___ 3.00.  In 1991, however, Massachusetts decided to convert its rate-setting methodology to a so-called "class rate" system. Rather than basing reimbursement rates on the individual health care provider's idiosyncratic costs for the previous year, DMA decided to propose a single, fixed reimbursement rate for each of the five medical services categories, supra, which would be _____ applied across-the-board to all in-state health care providers, without regard to their individual costs. During the transition to the new "class rate" system, a series of "interim" and "phase- in" rates were to be utilized.  Under the Medicaid Act and regulations, a State must meet two conditions before instituting "material" or "signifi- cant" changes in its Medicaid program:2 i.e., (1) submit a Plan amendment to HCFA for approval, "describ[ing]" the methods used ____________ to set rates under 42 U.S.C. 1396a(a)(30), see 42 C.F.R.  ___ 447.201(b) (emphasis added), and (2) provide public notice "describing the proposed change[s]" and "[e]xplain[ing] why [it] __________ is changing its methods and standards," see id. 447.205(c)(1), ___ ___ (3) (emphasis added). During a thirty-month period beginning in June 1991, Massachusetts issued public notices relating to the proposed  ____________________ 2We accept, arguendo, defendants' concession that the ________ conversion to a "class rate" system constituted a "significant" and "material" change.  5 change, and published a series of regulations, setting forth the interim, phase-in, and final class rates in "bottom-line" dollar figures for each of the five medical service categories, without detailing the particular formula and factors used to arrive at the proposed "bottom-line" rate figures. Thereafter, DMA conducted a series of public meetings to explain the proposed changes to health care providers, including appellees, and other interested parties. On January 1, 1994, the final class rates took effect, superseding the interim and phase-in rates. Plaintiffs soon filed this section 1983 action, alleging that the DMA commissioner and its members had violated various substantive and procedural requirements prescribed by 42 U.S.C. 1396a(a)(30).3 By way of procedural violations, the complaint alleged that the pre-January 1994 public notices issued by defendants contained legally deficient "descriptions" of the proposed new methods and procedures, by failing to disclose the formula defendants used to arrive at either the interim, phase- _______ in, or final class rates. The complaint further alleged that  ____________________ 3As substantive violations, plaintiffs first alleged that the State had adopted its new methodology solely for the impermissible purpose of limiting its financial outlays under the Medicaid program, contrary to 42 U.S.C. 1396a. See Amisub ___ ______ (PSL), Inc. v. Colorado Dep't of Social Servs., 879 F.2d 789, ___________ _________________________________ 800-01 (10th Cir. 1989), cert. denied, 496 U.S. 935 (1990). _____ ______ Second, plaintiffs alleged that the class rates arrived at under the new fixed-rate methodology were so arbitrary and unreasonably low that many health care providers would have no financial incentive to participate in the Massachusetts Medicaid program, thereby ensuring that "equal access" to needed medical services could not be provided to all low-income individuals in all geographical areas at the same level as the general population. See 42 U.S.C. 1396a(a)(30). ___ 6 defendants failed to file an appropriate amendment to the Massachusetts Plan, "describing" the "material" changes in its reimbursement rate methodology. Plaintiffs moved for partial summary judgment on their two procedural claims.  Massachusetts filed a Plan amendment ("Amendment 003") with the HCFA regional office in March 1994.4 The amendment indicated the proposed change from a cost-based to a "class rate" system by deleting a single word from the original Plan descrip- tion: "fixed negotiated fee schedules" now became simply "fixed fee schedules." Although a Plan amendment is deemed approved unless HCFA acts within ninety days of its filing, see 42 C.F.R. ___ 430.16(a), HCFA tolled the ninety-day period by advising defendants that additional information was needed i.e., "the ____ methodology or formula for the calculation of the fixed rate"  to enable a final approval determination. See id.  ___ ___ 430.16(a)(ii).  Prior to the time DMA responded to the HCFA request for information, and before any final HCFA decision on Amendment 003, the district court granted partial summary judgment for plaintiffs on their procedural claims, ruling that neither Amendment 003 nor defendants' pre-January 1994 public notices provided adequate detail on the proposed "methods and procedures" for calculating final class rates. See Visiting Nurse Ass'n of ___ ________________________  ____________________ 4Retroactive effect to "the first day of the quarter," viz., January 1, 1994 is accorded any "approvable plan [amend- ___ __________ ment] . . . submitted to [the HCFA] regional office." 42 C.F.R. 430.20(b) (emphasis added); see also id. 447.256(c).  ___ ____ ___ 7 N. Shore, Inc. v. Bullen, 866 F. Supp. 1444, 1459-62 (D. Mass. _______________ ______ 1994). The court concluded that these procedural lapses rendered the final class rates invalid, thus obviating any need to determine whether the proposed new methodology or rates reasonably ensured compliance with the substantive requirement  "equal access" to medical care imposed by section 1396(a)(30). Id. at 1462.  ___ Without conceding any procedural lapse, defendants issued another public notice on September 23, 1994, containing a detailed description of the methodology used to calculate the "new" final class rates, which were to take effect on November 1, 1994. In December 1994, defendants filed a second Plan amendment with HCFA ("Amendment 023"), which provided the same level of detail as the September 24, 1994 public notice. Defendants then asked the district court to declare them in compliance with the procedural requirements of section 1396a(a)(30). Then, in April 1995, while Amendments 003 and 023 remained pending, HCFA was notified that defendants wished to revise and update Amendment 003 to include the detailed information contained in Amendment 023. Defendants thus sought to make any HCFA Plan-amendment approval fully retroactive to January 1, 1994, rather than October 1994. See supra note 4. Three days later, HCFA approved ___ _____ Amendment 003, as revised, retroactive to January 1, 1994. The district court entered final judgment, based on four essential holdings. Visiting Nurse Ass'n of N. Shore, Inc. _______________________________________ v. Bullen, No. 94-10123-NG (D. Mass. June 30, 1995). First, the ______ 8 court reaffirmed its August 1994 declaratory ruling that defen- dants' initial implementation of the final class rates on January 1, 1994 was invalid for failure to comply with the public notice and Plan amendment requirements of section 1396a(a)(30), and directed entry of its declaratory judgment nunc pro tunc (i.e., ____ ___ ____ effective September 30, 1994), the date on which its initial stay of the judgment expired. Id., slip op. at 2. Second, defendants ___ were found to have been in compliance with the section 1396a(a)(30) procedural requirements as of November 1, 1994, after providing detailed descriptions of the new rate-setting methodology in their September 1994 public notice and in Amendment 023. Id. Third, the district court ruled that ___ defendants had never violated the section 1396a(a)(30) public notice and Plan amendment requirements relating to their pre- January 1994 imposition of the interim and phase-in rates, presumably because these transitional rates, unlike the final class rates, did not effect a "material" or "significant" change from pre-1991 "cost-based" methods and procedures. Id. at 2-3. ___ Finally, the district court dismissed plaintiffs' remaining claims alleging that the new final class rates violated the substantive requirements of the section 1396a(a)(30) "equal access" clause since its decision invalidating the rates due to procedural defects rendered further decision on the alleged substantive violations unnecessary. Id. at 3. ___ II II DISCUSSION DISCUSSION __________ 9 A. Standards of Review A. Standards of Review ___________________ We review the grant of summary judgment de novo, to __ ____ determine whether the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, as well as any reasonable inferences therefrom, when viewed in the light most favorable to the nonmoving party, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See McCabe v. ___ ______ Life-Line Ambulance Serv., Inc., 77 F.3d 540, 544 (1st Cir.), _________________________________ petition for cert. filed, 64 U.S.L.W. 3808 (U.S. May 29, 1996) ________ ___ _____ _____ (No. 95-1929). Normally, we accord plenary review to the district court's statutory and regulatory interpretations. See Nowd v. ___ ____ Rubin, 76 F.3d 25, 26 n.1 (1st Cir. 1996). When a federal agency _____ charged with administering a particular program interprets its own enabling statute, however, we engage in a two-tiered review: "First, always, is the question whether Con- gress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court deter- mines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence __ _____ __ _________ __ ___ _______ of an administrative interpretation. Rather, __ __ ______________ ______________ if the statute is silent or ambiguous with respect to a specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Heno v. FDIC, 20 F.3d 1204, 1208-09 (1st Cir. 1994) (quoting ____ ____ 10 Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., _____________________ _______________________________________ 467 U.S. 837, 842-43 (1984)) (emphasis added) ("Chevron").  _______ As a federal agency charged with administering the Medicaid program, see supra note 1, HCFA plainly is entitled to ___ _____ Chevron deference in its interpretations of the Act and the _______ implementing regulations. See North Carolina v. United States ___ ______________ _____________ Dep't of Health and Human Servs., 999 F.2d 767, 769-70 (4th Cir. _________________________________ 1993) (noting that an HCFA interpretation of its own regulations is entitled to "considerable deference"); Folden v. Washington ______ __________ State Dep't of Social and Health Servs., 981 F.2d 1054, 1058 (9th _______________________________________ Cir. 1992); Missouri Dep't of Social Servs. v. Sullivan, 957 F.2d _______________________________ ________ 542, 544 (8th Cir. 1992). Indeed, when a federal agency has promulgated and published a regulation pursuant to its own enabling statute, we review its interpretation of that regulation __________ under a standard even "more deferential . . . than that afforded under Chevron" to the agency's interpretation of the Statute. _______ National Med. Enters. v. Shalala, 43 F.3d 691, 697 (D.C. Cir. ______________________ _______ 1995); e.g. Indiana Ass'n of Homes for the Aging, Inc. v. Indiana ___ __________________________________________ _______ Office of Medicaid Policy and Planning, 60 F.3d 262, 266 (7th ________________________________________ Cir. 1995) (applying heightened deference to HCFA regulations); see Thomas Jefferson Univ. v. Shalala, 114 S. Ct. 2381, 2386 ___ _______________________ _______ (1994) (deferring to HHS interpretation of Medicare regulation); Stinson v. United States, 508 U.S. 36, 44 (1993); Johnson v. _______ ______________ _______ Watts Regulator Co., 63 F.3d 1129, 1134-35 (1st Cir. 1995); see ___________________ ___ also Consarc Corp. v. United States Treasury Dep't, 71 F.3d 909, ____ _____________ _____________________________ 915 (D.C. Cir. 1995). "[P]rovided an agency's interpretation of 11 its own regulation does not violate the Constitution or a federal statute, it must be given `controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" _______ _________ Stinson, 508 U.S. at 44 (citation omitted) (emphasis added); see _______ ___ Loma Linda Univ. v. Schweiker, 705 F.2d 1123, 1126 (9th Cir. _________________ _________ 1983) (noting that an HCFA interpretation of its own regulation is entitled to deference "if it is within the range of reasonable meanings the words permit").  B. Defendants' Appeal B. Defendants' Appeal __________________ Defendants appeal from that portion of the final judgment declaring them in violation of the section 1396a(a)(30) procedural requirements during the period January 1 through October 31, 1994. Defendants claim, alternatively, that (1) the procedural requirements imposed by section 1396a(a)(30) are not enforceable by health care providers, (2) even if enforceable, however, defendants violated neither procedural requirement cited by plaintiffs, (3) the district court abused its discretion in August 1994 by ruling that defendants had violated section 1396a(a)(30), rather than staying the district court proceedings while Amendment 003 remained pending before HCFA, or (4) the declaratory judgment entered by the district court granted retro- spective relief barred by the Eleventh Amendment, see U.S. Const. ___ amend. XI. 1. Standing: Enforceable Rights 1. Standing: Enforceable Rights ____________________________ Section 1983 enables a private action against a State official to vindicate federal statutory rights enforceable by the 12 plaintiff. See 42 U.S.C. 1983; Albiston v. Maine Comm'r of ___ ________ _______________ Human Servs., 7 F.3d 258, 261 (1st Cir. 1993). Whether section ____________ 1396a(a)(30) creates "enforceable" procedural and substantive rights turns on "whether [it] was intend[ed] to benefit the putative plaintiff[s]." If so, the provision creates an enforceable right unless it reflects merely a "congressional preference" for a certain kind of conduct rather than a binding obligation on the governmental unit, or unless the interest the plaintiff asserts is "'too vague and amorphous'" such that it is "'beyond the competence of the judiciary to enforce.'"  Wilder, 496 U.S. at 509 (citations omitted).5 ______ a) Substantive Rights6 a) Substantive Rights __________________ Section 1396a(a)(30) arguably describes two distinct substantive "equal access" rights: the right to require a State medicaid program to use reimbursement "methods and procedures"  ____________________ 5In January 1996, Congress enacted 42 U.S.C. 1320a-2 (a Medicaid Act provision will "not [] be deemed unenforceable because of its inclusion in a section . . . requiring a State plan or specifying the required contents of a State plan"), which overturned, in part, the Supreme Court decision in Suter v. _____ Artist M., 503 U.S. 347 (1992). Before 1320a-2 was enacted, __________ some commentators had suggested that Suter's rationale supplanted _____ the traditional Wilder test. But see, e.g., Albiston, 7 F.3d at ______ ___ ___ ____ ________ 262-63 (holding that Suter did not overturn Wilder, but merely _____ ______ superimposed an additional threshold test). Consequently, we assume that Congress intended that 1320a-2 serve to resurrect the Wilder test, with no Suter overlay. ______ _____ 6We address the enforceability of the 1396a(a)(30) substantive requirements as a threshold issue because the district court judgment dismissed plaintiffs' substantive claims, albeit on other grounds. See infra Section II.B.2(b). Even ___ _____ though we find those other grounds infirm, we may uphold the district court ruling on any ground supported by the record. See ___ Four Corners Serv. Station, Inc. v. Mobil Oil Corp., 51 F.3d 306, ________________________________ _______________ 314 (1st Cir. 1995).  13 which (1) will "safeguard against unnecessary utilization of such [medical] care and services and [] assure that payments are consistent with efficiency, economy, and quality of care," and (2) are "sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area." 42 U.S.C. 1396a(a)(30).  In Wilder, the Supreme Court held that comparable ______ provisions of section 1396a(a)(13) ("the Boren Amendment") did create enforceable substantive rights for institutional health care providers. See Wilder, 496 U.S. at 520. Section ___ ______ 1396a(a)(13) mandates that the State Plan provide: (A) for payment . . . of the hospital servic- ________ es, nursing facility services, and services _________________ in an intermediate care facility for the ____________ ____ ________ mentally retarded provided under the plan through the use of rates (determined in ___ __ _____ accordance with methods and standards developed by the State . . .) which the State finds, and makes assurances satisfactory to _____ _____ __________ the Secretary, are reasonable and adequate to __________ ________ meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable State and Federal laws, regulations, and quality and safety standards and to assure that individuals eligible for medical assistance have reasonable access . . . to inpatient __________ ______ hospital services of adequate quality. 42 U.S.C. 1396a(a)(13) (emphasis added).  Every court that has considered whether the Wilder ______ rationale likewise applies to the second "equal access" right described in section 1396(a)(30) has determined that health care providers were intended beneficiaries under both the Boren 14 Amendment and section 1396(a)(30), since health care providers, as payees, obviously are affected by substantive changes in State reimbursement schemes under Medicaid. See, e.g., Arkansas Med. ___ ____ _____________ Soc'y, Inc. v. Reynolds, 6 F.3d 519, 528 (8th Cir. 1993); Sobky ___________ ________ _____ v. Smoley, 855 F. Supp. 1123, 1137-38 (E.D. Cal. 1994); Oklahoma ______ ________ Nursing Home Ass'n v. Demps, 792 F. Supp. 721, 727 (W.D. Okla. __________________ _____ 1992); Illinois Hosp. Ass'n v. Edgar, 765 F. Supp. 1343, 1348-49 ____________________ _____ (N.D. Ill. 1991). Without citation to supporting authority, defendants nonetheless insist that section 1396(a)(30) and the Boren Amendment are distinguishable. i) Intended Beneficiaries i) Intended Beneficiaries ______________________ The Wilder Court reasoned that because the Boren ______ Amendment "establishes a system for reimbursement of providers and is phrased in terms benefiting health care providers . . . [in that] [i]t requires a state plan to provide for `payment . . . of the hospital services, nursing facility services, and services in an intermediate care facility for the mentally retarded provided under the plan,'" "[t]here can be little doubt that health care providers are the intended beneficiaries." Wilder, 496 U.S. at 510.7 Defendants argue, however, that unlike ______ the Boren Amendment, section 1396a(a)(30) does not list specific  ____________________ 7Although Medicaid recipients also are intended beneficiaries under the "equal access" requirement as it affects the availability of their medical care, it is well settled that Congress may create more than one class of intended beneficiary. See Freestone v. Cowan, 68 F.3d 1141, 1150 n.10 (9th Cir. 1995) ___ _________ _____ (citing Golden State Transit Corp. v. City of Los Angeles, 493 ___________________________ ____________________ U.S. 103, 110 (1989); Carelli v. Howser, 923 F.2d 1208, 1211 (6th _______ ______ Cir. 1991)).  15 categories of health care providers (e.g., hospitals, nursing facilit[ies], and intermediate care facilit[ies]), hence it cannot be said that Congress focused on providers as section _______ 1396a(a)(30) beneficiaries. We are not persuaded. The Wilder Court first observed that the statute "is ______ phrased in terms benefiting health care providers," and leaves _________ "little doubt that health care providers are the intended benefi- _________ ciaries," then proceeded to illustrate how the plain language of __________ the Boren Amendment "establishes a system for reimbursement of providers" through its listing of specific types of health care providers. Nowhere did the Court indicate that the more general term "providers" would not suffice, however, or that a listing of specific types of providers is a sine qua non without which a ____ ___ ___ congressional intent to benefit health care providers could not be inferred. As long as the two statutory provisions evince a congressional concern for preserving financial incentives to providers by ensuring adequate reimbursement payment levels  providers are appropriately considered intended beneficiaries. See Arkansas Med. Soc'y, Inc., 6 F.3d at 526.  ___ _________________________ (ii) "Preference" or "Binding Obligation" (ii) "Preference" or "Binding Obligation" __________________________________ Defendants argue that section 1396a(a)(30) articulates a more discretionary "access" standard than that in the Boren Amendment, and that the additional discretion thus conferred belies a congressional intendment to lay down any "binding obligations" on the State in section 1396(a)(30). See Wilder, ___ ______ 496 U.S. at 509. As defendants see it, the Boren Amendment (1) 16 requires the State not only to meet the ultimate benchmark of providing comparable "access" to medical care, but also the preliminary obligation to make "findings" and "assurances," satisfactory to the Secretary, that State reimbursement rates can ensure reasonable and adequate access, as well as comply with "State and Federal laws, regulations, and quality and safety standards," and (2) limits the potential reimbursement methods and procedures that the State can employ to the institution of "rates," rather than permitting more innovative or ad hoc __ ___ reimbursement systems that might be less rate-dependent. We find no indication that the Wilder holding turned on these consider- ______ ations.  First and foremost, the Boren Amendment and section 1396a(a)(30) are prefaced with the same mandatory language  "[a] State plan for medical assistance must . . . [p]rovide," 42 ____ U.S.C. 1396a(a); see Edgar, 765 F. Supp. at 1349 and the ___ _____ "reasonable" and "equal" access requirements upon which federal Medicaid funding depends, see 42 U.S.C. 1396c, are conditions ___ precedent to an approvable State Plan. See Wilder, 496 U.S. at ___ ______ 511 (contrasting with statute in Pennhurst State Sch. & Hosp. v. ____________________________ Halderman, 451 U.S. 1, 24 (1981), where hortatory language did _________ not make "compliance with the provision a condition of receipt of federal funding"); Arkansas Med. Soc'y, Inc., 6 F.3d at 526; see __________________________ ___ also supra note 5 (discussing newly enacted 42 U.S.C. 1320a-2). ____ _____ Thus, the mandatory language in section 1396a(a) defies fair characterization as a mere "congressional preference." 17 Second, the majority opinion in Wilder mentioned the ______ Boren Amendment requirement that there be "findings" and "assurances" merely to rebut a suggestion in the Wilder dissent ______ that Congress had intended to accord plaintiffs standing to assert a judicial challenge to a State's default on these two procedural obligations, but not to challenge a substantive default (i.e., a State's adoption of rates that do not ensure "reasonable access," or that are not "adequate" to compensate "efficient[]" provider costs). See Wilder, 496 U.S. at 514 ("We ___ ______ reject that argument because it would render the statutory requirements of findings and assurances, and thus the entire reimbursement provision, essentially meaningless [since] . . . [i]t would make little sense for Congress to require a State to make findings without requiring those findings to be correct."). The premise that procedural rights normally exist only as aids to the enforcement of substantive rights is not interchangeable with the proposition that substantive rights cannot exist absent an express provision of attendant procedural rights. Thus, the majority opinion in Wilder in no sense suggests that the Boren ______ Amendment's substantive "access" requirement would have been found any less mandatory if, like section 1396(a)(30), it had contained no explicit procedural requirement of "findings" and "assurances."  iii) Judicial Enforceability iii) Judicial Enforceability _______________________ Defendants intimate, however, that absent any requirement of "findings" and "assurances," section 1396a(a)(30) 18 is less amenable to effective judicial enforcement than the Boren Amendment. As we have explained, however, substantive requirements are not "impermissibly vague simply because [they] require[] judicial inquiry into `reasonableness,'" or "adequate rates," as long as "the action or purpose whose `reasonableness' [or `adequacy'] is commanded has been clearly delineated and is susceptible of judicial ascertainment." Albiston, 7 F.3d at 267 ________ (collecting cases).  The Boren Amendment and section 1396a(a)(30) contain nearly identical substantive requirements that the rates, or methods and procedures, used to determine reimbursements to health care providers ultimately ensure reasonable, adequate or equal "access" to medical care, which the Supreme Court in Wilder ______ decided did not constitute a standard too vague or amorphous for ___ judicial enforcement. See Wilder, 496 U.S. at 515 ("[T]he ___ ______ statute imposes the concomitant obligation to adopt reasonable and adequate rates."). Indeed, the term "equal access," as employed in section 1396a(a)(30), arguably provides a more concrete standard, objectively measurable against the health care access afforded among the general population, whereas the Boren Amendment employs the somewhat less objective benchmark: "reasonable" access. Nor do we discern a material distinction between the focus on "methods and procedures" required by section 1396(a)(30) and the focus on "rates" required by the Boren Amendment. In either instance, the required determination as to whether the 19 State methods or procedures, or the resultant rates of reimburse- ment, are adequate to ensure "access" is neither more nor less daunting a judicial task. See id. at 519 (noting that although ___ __ States have great flexibility in choosing among a broad "range of reasonable rates," "the statute and regulation[s] set out factors which a State must consider in adopting its rates," so that "there certainly are some rates outside that range that no State could ever find to be reasonable and adequate under the Act.").8 For the foregoing reasons, therefore, we conclude that plaintiffs possess standing to enforce the substantive section 1396a(a)(30) requirement that the State adopt "methods and procedures" which will afford "equal access" to medical care as defined in section 1396a(a)(30). b) Procedural Rights b) Procedural Rights _________________ Plaintiffs further contend that section 1396a(a)(30), as interpreted and applied through the HCFA implementing regula- tions, establishes two coincident procedural requirements designed to ensure that health care providers may enforce the  ____________________ 8We reject the implicit suggestion by defendants that the absence of a "findings" and "assurances" requirement under  1396a(a)(30) makes meaningful judicial review wholly impracticable in that the courts have no factual bases for ascertaining whether the State's chosen "methods and procedures" satisfy the substantive "equal access" requirement. Setting aside the question whether the 1396a(a)(30) implementing regulations afford any procedural rights that ensure disclosure, see infra Section II.B.2(a), plaintiffs may adduce evidence ___ _____ concerning the inadequacy of the State's selected methods and procedures, or flaws in the State's substantive decisionmaking processes, in any number of ways; for example, with information acquired by or from the State during public hearings, in proposed Plan changes, or in the published State regulations. 20 substantive right of "equal access": the requirements that the State file a Plan amendment and a public notice "describing" its proposed new "methods and procedures" in some detail. Since we conclude that defendants have not violated these procedural requirements, see infra Section II.B.2(a), we need not reach the ___ _____ enforceability issue.9  2. Claimed Violations of Enforceable Rights 2. Claimed Violations of Enforceable Rights ________________________________________ a) Procedural Rights a) Procedural Rights _________________  ____________________ 9We likewise reserve judgment as to whether, and what extent, procedural rights prescribed only in the implementing regulations, rather than directly by statute, may be enforced in a 1983 action. See, e.g., Oklahoma Nursing Home Ass'n, 792 F. ___ ____ ___________________________ Supp. at 725-26. 21 i) Plan Amendment 003 i) Plan Amendment 003 __________________ Prior to the time Amendment 003 was submitted to HCFA in March 1994, the approved Massachusetts Plan described its "methods and procedures" for reimbursing providers as "fixed negotiated fee schedules." Amendment 003 purportedly altered the "methods and procedures" to be employed under the new class rate system simply by deleting the word "negotiated," with the result that the new rates were to be based on "fixed fee schedules." Plaintiffs argue that the cryptic phrase "fixed fee schedules" is patently deficient to describe the proposed change in the Massachusetts reimbursement "methods and procedures," and that under whatever conceivable definition the phrase might be given, it utterly failed to notify HCFA or plaintiffs that defendants planned to change from a cost-based system to a class rate system, or to explain with any precision the methodology or formula defendants used to arrive at the bottom-line reimbursement figures announced in the DMA regulation. See Mass. ___ Regs. Code tit. 114.3, 3.04(4). We do not agree. First, HCFA itself implicitly determined that the phrase "fixed fee schedules" met the section 1396a(a)(30) mandate, otherwise it could not have approved Amendment 003 retroactive to January 1, 1994. See supra note 4. In order to ___________ __ _______ _ ____ ___ _____ be entitled to retroactive effect to January 1, 1994, Plan amendment 003 had to have been "approvable" as submitted in March __ _________ __ _____ 1994, when it contained merely the three-word description ____ presently challenged by plaintiffs as insufficient to satisfy 22 section 1396a(a)(30).10 We must therefore review the implicit interpretation given section 1396a(a)(30) by HCFA in this case. At its initial stage, Chevron review accords no _______ deference to the interpretation an agency gives to its enabling statute. See supra Section II.A. If the reviewing court indepen- ___ _____ dently determines that the intent of the statute is clear, as disclosed in its plain language and design, the statutory language is to be given full effect. See Grunbeck v. Dime Sav. ___ ________ __________ Bank of N.Y., FSB, 74 F.3d 331, 340-41 (1st Cir. 1996); ____________________ Strickland v. Commissioner of Me. Dep't of Human Servs., 48 F.3d __________ __________________________________________ 12, 16-17 (1st Cir.), cert. denied, 116 S. Ct. 145 (1995).  _____ ______ Section 1396a(a)(30) mandates that a State Plan provide "methods and procedures relating to . . . the payment for [] [medical] care and services." Plaintiffs argue that "methods" has a plain or acquired meaning that necessitates disclosure of the formula the State used to arrive at its proposed bottom-line reimbursement figures. Thus, plaintiffs suggest that the solitary statutory term "rates" might permit a Plan amendment to list only bottom-line figures, cf. 42 U.S.C. 1396a(a)(13), but ___ that the presence of the term "methods" forecloses such an approach. Once again, we are unable to agree.   ____________________ 10Thus viewed, the HCFA interpretation comports with 42 C.F.R. 430.16(a)(ii), which empowers HCFA to ask the State for any "additional information" the agency needs to conduct its "final [approval] determination." On the other hand, if the requested "additional information" were a necessary part of the initial submission by the State, and hence of its Plan, Amendment 003 would only have been retroactive to January 1995. See supra ____ ___ _____ p. 9. 23 Even if the distinction suggested by plaintiffs were deemed sound, the question would remain: with what degree of specificity or detail must a State describe the methodology used in its Plan amendment? In this case, for example, although non- exhaustive, the terms "cost-based" and "class rates" assuredly are to some degree descriptive of the proposed change in methodology, particularly among the initiated, viz., health care ___ providers. Yet we are unable to say that section 1396a(a)(30) defines, in plain language, the term "methods and procedures," nor, more importantly, that it prescribes the level of detail with which a Plan must describe "methods and procedures." Unlike the Boren Amendment, moreover, section 1396a(a)(30) does not require the State to make "findings" and "assurances," a require- ment that arguably might be thought to anticipate a somewhat greater degree of detail and specificity from a Plan's description. As we are unable to discern either a "plain language" meaning or design in section 1396a(a)(30) relating to "the precise question at issue," Chevron, 467 U.S. at 842  _______ i.e., the degree of specificity required in a Plan amendment description of proposed new "methods and procedures" we next turn to defendants' contention that Congress meant to leave this matter for determination by HCFA, the administering agency.11  The second stage in the Chevron analysis counsels "a _______  ____________________ 11Plaintiffs do not claim that the available legislative history provides useful guidance. See Strickland, 48 F.3d at 17 ___ __________ (stating that reviewing court may "examine the legislative history, albeit skeptically, in search of an unmistakable expres- sion of congressional intent"). 24 high degree of respect for the agency's role" in administering its enabling statute. See Strickland, 48 F.3d at 17 ("The agency ___ __________ need not write a rule that serves the statute in the best or most logical manner; it need only write a rule that flows rationally from a permissible construction of the statute.") see Lamore v. ___ ______ Ives, 977 F.2d 713, 718 (1st Cir. 1992); accord Caribbean ____ ______ _________ Petroleum Corp. v. United States EPA, 28 F.3d 232, 234 (1st Cir. _______________ __________________ 1994); Cabral v. INS, 15 F.3d 193, 194 (1st Cir. 1994) (agency ______ ___ interpretation "is entitled to deference unless arbitrary, capricious, or manifestly contrary to the statute"). As a general rule, longstanding agency interpretations are entitled to greater deference than more recent ones. See Bowen v. American ___ _____ ________ Hosp. Ass'n, 476 U.S. 610, 646 n. 34 (1986); Mayburg v. Secretary ___________ _______ _________ of Health and Human Servs., 740 F.2d 100, 106 (1st Cir. 1984). ___________________________ Further, the more persuasive the rationale for an agency interpretation, the more deference it is due, especially if the statute administered by the agency involves complex questions peculiarly within the agency's acquired, technical, or institutional expertise. Bowen, 476 U.S. at 646.  _____ Plaintiffs stress that these HCFA regulations describe a State Plan as a "comprehensive written statement," 42 C.F.R.  _____________ 430.10 (emphasis added), which must (i) "contain[] all informa- tion necessary for HCFA to determine whether the plan [or plan amendment] can be approved to serve as a basis for Federal financial participation (FFP) in the State program," id., and ___ (ii) "describe the policy and the methods to be used in setting 25 payment rates for each type of service included in the State's Medicaid program," id. 447.201. Although these HCFA ___ regulations are not facially inconsistent with section 1396a(a)(30), neither do they expressly resolve the ambiguity inherent in the statute.  Contrary to plaintiffs' assertion, the section 430.10 reference to comprehensiveness accurately describes the State Plan, even under the minimalist interpretation given the term "description" by defendants and HCFA, since we think one cannot rationally contend that a State Plan itself, which must cover no less than sixty-two different criteria, see 42 U.S.C.  _________ ___ 1396a(a)(1)-(62), is not a "comprehensive" document. For this reason and because HCFA's regulations do not prescribe the level of specificity and comprehensiveness with which "methods and procedures" must be described in a Plan, we must consider the implicit interpretation HCFA has given its own regulations. Plaintiffs concede that the initial Massachusetts Plan approved by HCFA had been in existence for years, yet it contained only a bare-bones, four-word description of its "methods and procedures." When Massachusetts decided in 1991 to effect a material change in its rate-setting system, from a cost- based to a class-rate system, it reasonably understood that HCFA had interpreted its own implementing regulations to require no greater degree of specificity in the Amended Plan's description _______ of reimbursement rates than that provided in the initial Massachusetts Plan, which had gone unchallenged for many years. 26 See Bowen, 476 U.S. at 646 n. 34; Lynch v. Dawson, 820 F.2d 1014, ___ _____ _____ ______ 1020 (9th Cir. 1987) (agency's interpretation of regulation is accorded various degrees of deference based on duration and consistency of agency position). Plaintiffs correctly contend, of course, that this longstanding HCFA interpretation does not foreclose a federal court from determining whether the interpretation an agency has given its own regulations rationally comports with the statutory and regulatory language. Nevertheless, their argument seriously devalues the heightened Chevron judicial deference reaffirmed in _______ Stinson, which requires the reviewing court to decide whether the _______ agency's interpretation of its own regulation is "plainly _______ erroneous or inconsistent with the regulation." Stinson, 508 _________ _______ U.S. at 45 (emphasis added). Since sections 430.10 and 447.201, like section 1396a(a)(30) itself, do not preclude the interpretation implicitly given them by HCFA, we may not second-guess its reasonable policy judgment. See Bowen, 476 U.S. at 646; ___ _____ Massachusetts Fed'n of Nursing Homes v. Commonwealth of Mass., ______________________________________ ______________________ 772 F. Supp. 31, 39 (D. Mass. 1991) ("The HCFA certainly has more expertise in this complicated area of the law than the courts."). And because plaintiffs have not chosen to join HCFA as a party defendant, see 42 U.S.C. 1396c, we can only infer the rationale ___ for HCFA's longstanding practice from its prior approval of Amendment 003 and its predecessor. Moreover, we find readily apparent a sound policy reason for the HCFA's action.  27 The Medicaid Act designedly affords States considerable flexibility in administering their respective Medicaid programs, allowing each to devise and modify its Plan in response to prevailing local medical and financial conditions. Once the sixty-two statutory minima in section 1396a(a) are met, each participating State has "wide discretion in administering its local program." See, e.g., Erie County Geriatric Ctr. v. ___ ____ _____________________________ Sullivan, 952 F.2d 71, 73-74 (3d Cir. 1991); Lewis v. Hegstrom, ________ _____ ________ 767 F.2d 1371, 1373 (9th Cir. 1985). HCFA's regulatory interpretation permitting terse descriptions of "methods and procedures," such as "cost-based" or "class rate" arguably serves this salutary goal as well. Mandating the inclusion of a detailed formula in the State Plan itself could require a State to file a new Plan amendment each time it needed to alter any ___ significant integer in its formula, thereby imposing a cumbersome administrative burden on the State as well as HCFA. Thus, whatever one might think of its wisdom, we cannot say that the implicit policy choice made by HCFA was precluded, either by the statute or HCFA regulations. See Massachusetts Fed'n of Nursing ___ ______________________________ Homes, 772 F. Supp. at 39 (noting that HCFA approval of Plan, _____ unless inconsistent with the statute or regulation, implicitly establishes definition of comprehensiveness of the term "methods and procedures" as a matter of law). Nor do we think the agency decision approving defendants' description of the new class rate system as one utilizing "fixed fee schedules" was impermissible, given the 28 original Massachusetts Plan's longstanding description of its provider-cost-based system as a "negotiated fixed fee schedule." HCFA fairly and sensibly reasoned that deletion of the term "negotiated" signified clearly enough that individual providers no longer would be entitled to reimbursement rates set according to their idiosyncratic cost experiences, but would be confined for the most part to across-the-board "fixed" rates established for services rendered in each of the five covered health service classifications. Accordingly, as the longstanding interpretation reflected in the HCFA regulations was not plainly erroneous, defendants were entitled to place reasonable reliance on HCFA's interpretation in preparing and submitting their March 1994 Plan Amendment 003. Cf. Sekula v. FDIC, 39 F.3d 448, 457 (3d Cir. ___ ______ ____ 1994) ("[A] person `proceeding in good faith should not be subjected to a trap brought about by an interpretation of a regulation hidden in the bosom of the agency' . . . . [b]ut there is no `trap' when the agency's interpretation of a regulation is public and long-standing.") (citation omitted). ii) Public Notice Under Section 447.205  ii) Public Notice Under Section 447.205  ___________________________________ Plaintiffs next contend that the HCFA regulations mandate that the public notices issued by the State relating to reimbursement rate changes likewise contain a complete description of the proposed change in methodology. Section 447.205 provides, in pertinent part: (a) When notice is required. Except as specified in paragraph (b) of this section, the agency must provide public notice of any significant proposed change in its methods 29 and standards for setting payment rates for services. . . . . . . . (c) Content of notice. The notice must-- (1) Describe the proposed change in methods and standards; (2) Give an estimate of any expected increase or decrease in annual ag- gregate expenditures; (3) Explain why the agency is changing its methods and standards; (4) Identify a local agency in each county (such as the social services agency or health department) where copies of the proposed changes are available for public review; (5) Give an address where written com- ments may be sent and reviewed by the public; and (6) If there are public hearings, give the location, date and time for hearings or tell how this informa- tion may be obtained. 42 C.F.R. 447.205.  Defendants respond that section 447.205 was complied with because the representative public notice hereinafter quoted explained "why DMA is changing its methods and standards," i.e., "to implement a class rate system by eliminating many of the idiosyncratic adjustments that existed previously [under the cost-based rate setting system]": The proposed amendments do not change the existing methodology from July 1, 1992 - December 31, 1992 except for a provision to allow some eligible providers to request rate reviews based on their cost report, with inflation equal to 1.0. Effective January 1, 1992, the proposed amendments change the structure of the reimbursement methodology to a class rate system: establishing new _____ ____ ______ criteria for administrative adjustments; eliminating, among other things, costs beyond 30 agency control, management initiatives, program innovation rate adjustments, and appeals sections of the regulation. It is estimated that the proposed amendments will increase program expenditures by the Department of Public Welfare by approximately $335,000. (Emphasis added.) For the reasons discussed in Section II.B.2.(a)(i), supra, we believe the public notices issued by defendants need _____ not have "describ[ed]" the proposed changes in greater detail than that provided in Plan Amendment 003. Absent a reliable indication to the contrary, we must assume that HCFA construes the term "describe" in section 447.205(c)(1) as it interprets the same term in 42 C.F.R. 447.201 (providing that Plan amendment "must describe the policy and methods to be used in setting payment rates for each type of service included in the state's Medicaid program"). Cf. Gustafson v. Alloyd Co., 115 S. Ct. ___ _________ ___________ 1061, 1067 (1995) (noting presumption that a word or phrase used more than once in a statute is intended to have the same meaning); United States v. Rhode Island Insurers' Insolvency _____________ ___________________________________ Fund, 80 F.3d 616, 622 n.4 (1st Cir. 1996).12  ____ Plaintiffs complain that interested parties cannot know whether proposed changes in methodology threaten their substantive rights under section 1396a(a)(30) unless the public  ____________________ 12The only case remotely on point, see Methodist Hosps. v. ___ ________________ Indiana Family and Social Servs., 860 F. Supp. 1309, 1326-28 __________________________________ (N.D. Ind. 1994), does not undercut HCFA's interpretation. Although the notice involved in that case contained greater detail than these notices, the court found the notice adequate, not inadequate. Consequently, the case is not particularly instructive as to how much less detail might have been considered permissible.  31 notice is sufficiently informative. As their name suggests, however, "notice" provisions are neither invariably nor primarily designed to afford exhaustive disclosure, but to alert interested parties that their substantive rights may be affected in a forthcoming public proceeding. See Mississippi Hosp. Ass'n v. ___ ________________________ Heckler, 701 F.2d 511, 520 (5th Cir. 1983) (noting that notice is _______ designed to "outline[] the substance of the plan in sufficient detail to allow interested parties to decide how and whether to seek more information on the plan's particular aspects"); see ___ also 42 C.F.R. 447.205(c)(4), (6) (mandating the provision of ____ information to allow interested parties to initiate follow-up after 447.205 notice). Accordingly, HCFA might reasonably anticipate that the State would provide more detailed information, relating to its methodology, at the public hearings, especially since it is in the State's interest to respond to reasonable requests for further information at the public hearings, if for no other reason than to forfend a future section 1983 action by disgruntled health care providers. See supra note ___ _____ 8 (describing potential discovery burdens facing the State in  1983 action). Thus, HCFA's interpretation cannot be characterized as either plainly erroneous or inconsistent with the Medicaid statute.13   ____________________ 13Since the public notices complied with 447.205, we need not determine whether plaintiffs acquired actual notice during ______ the two and a half years of public consultative hearings and meetings, or whether any such actual notice might excuse the alleged procedural default under 447.205. See North Carolina ___ ______________ Dep't of Human Resources, 999 F.2d at 771 (finding that actual _________________________ notice did not cure procedural default). 32 Since defendants violated neither procedural requirement established in section 1396a(a)(30), we do not reach defendants' two remaining arguments i.e., whether the district court erred in refusing to stay its partial summary judgment while Amendment 003 remained pending before HCFA, and whether the district court's declaratory judgment constituted retrospective relief barred by the Eleventh Amendment.14   ____________________ 14Plaintiffs urge us to affirm the district court on another ground. See Four Corners Serv. Station, Inc., 51 F.3d at 314. ___ _________________________________ Before implementing the final class rates in January 1994, defendants failed to consult with the medical care advisory committee (MCAC), appointed by the Massachusetts Medicaid director to represent, inter alios, consumer groups, Medicaid _____ _____ recipients, and health care providers specializing in low-income medical services. See 42 U.S.C. 1396a(a)(4); 42 C.F.R.  ___ 431.12(e). We decline plaintiffs' request.  The alleged MCAC violation was first raised in the amended complaint filed in September 1994. The State subsequently recon- vened a MCAC, with which it consulted regarding the final rates. The 431.12(e) case law suggests that States should undertake their MCAC consultations as early in the Plan amendment process as practicable, preferably before any final decision on proposed changes to their reimbursement methodologies. See Morabito v. ___ ________ Blum, 528 F. Supp. 252, 264 (S.D.N.Y. 1981) (collecting cases). ____ Nonetheless, the Medicaid Act contains no express requirement that a State establish a MCAC, see 42 U.S.C. 1396a(a)(4), an ___ entity entirely the creature of the HCFA implementing regulations. See Morabito, 528 F. Supp. at 264. Further, the ___ ________ HCFA regulations prescribe no time bar for the recommended MCAC consultation. Thus, HCFA might reasonably conclude that (1) a State's failure to consult an MCAC, while not the preferred practice, does not constitute a sufficient ground for disapproving a Plan amendment in all circumstances, or (2) MCAC consultation is sufficient as along as it occurs before final HCFA approval of the Plan amendment. Given that the MCAC is a purely advisory body, with no veto power over the State's decisions, see Burgess v. Affleck, 683 F.2d 596, 600 (1st Cir. ___ _______ _______ 1982) (upholding district court's refusal to enjoin implementation of rates for alleged MCAC violation which was not "egregious"); cf. Mississippi Hosp. Ass'n, Inc., 701 F.2d at 523 ___ _____________________________ (noting court's reluctance to "read more into [ 431.12(e)] than is clearly expressed," where "the federal agency whose own regulation is in question has approved the state's actions"), this interpretation is neither plainly erroneous nor inconsistent 33 b) Substantive Right to "Equal Access" b) Substantive Right to "Equal Access" ___________________________________ The district court first dismissed plaintiffs' substan- tive claims on the mistaken ground that plaintiffs had stipulated to their dismissal. Upon reconsideration, the court again dismissed the substantive claims, apparently because its decision on the procedural claims had rendered their resolution unnecessary. Insofar as the district court meant to suggest that defendants' procedural violations from January to October, 1994, were sufficient in themselves to invalidate the final class rates during the January-October 1994 period, without regard to whether the rates violated plaintiffs' substantive "equal access" rights, its dismissal order cannot stand. See supra Section II.B.2(a). ___ _____ Since we have concluded that the State was in full procedural compliance, plaintiffs must now adduce evidence that (1) the methods and procedures adopted by the State were inadequate to ensure "equal access," or (2) the bottom-line reimbursement figures derived under that methodology were too low to retain health care providers in the Massachusetts Medicaid program. See ___ supra note 8. Conversely, if the district court meant to _____ suggest that judicial resolution of plaintiffs' substantive claims was unnecessary because HCFA has already approved Amendment 003 retroactive to January 1, 1994, we cannot agree. HCFA's approval of the State's proposed methods and procedures (i.e., "class rates"), though arguably entitled to the customary level of Chevron deference, are not automatically conclusive at _______  ____________________ with 1396a(a)(4).  34 the summary judgment stage. Further, the as-yet undeveloped factual record relating to plaintiffs' substantive claims does not reveal HCFA's rationale for approving the substantive terms of defendants' Plan amendment, or whether the final class rates have the actual effect of creating "unequal access" to medical services.  35 C. Plaintiffs' Cross-Appeal C. Plaintiffs' Cross-Appeal ________________________ Plaintiffs cross-appeal from the district court rulings that (1) defendants were in compliance with the section 1396a(a)(30) procedural requirements as of November 1, 1994, and (2) defendants did not violate the procedural requirements by instituting their interim and phase-in rates. Although the district court did not reveal the rationale for the latter holding, we presume that it found that the transitional rate methodologies had not effected a "material" or "significant" change from the pre-1991 methodologies. In light of our previous holding, see supra Section II.B., we deny plaintiffs' cross- ___ _____ appeal on both fronts.  First, if defendants complied with the putative proce- dural requirements in filing Amendment 003 and publishing their pre-January 1994 notices, it necessarily follows that their filing of the more detailed Amendment 023 and their post-October 1994 notices likewise would comply with the procedural thresholds prescribed by the HCFA regulations. Second, since we conclude, on the specific facts of this case, that deference is due HCFA's conclusion that a "description" of "methods and procedures" is adequate as long as it differentiates between a cost-based rate and a class rate system, we affirm the district court's finding that the interim and phase-in rates, which retained some aspects of the pre-1991 "cost-based" or "negotiated" rate systems, did not represent a cognizable change in the methods and procedures such as necessitated a Plan amendment or public notice. 36 III III CONCLUSION CONCLUSION __________ To the extent section 1396a(a)(30) might create the purported procedural rights advocated by plaintiffs, Chevron _______ deference is due HCFA's longstanding statutory and regulative interpretation that a State sufficiently describes its cost-based system as a "fixed negotiated fee schedule," and its proposed class rate system as "fixed fee schedules." We therefore reverse the district court ruling that defendants were in violation of section 1396a(a)(30)'s procedural requirements from January 1 to October 31, 1994. We likewise affirm the two district court rulings challenged in plaintiffs' cross-appeal. Finally, because summary judgment was improvidently granted on plaintiff's procedural claims, the district court ruling that no disposition was necessary on plaintiffs' substantive claims was in error.  Accordingly, the district court judgment for plaintiffs on their procedural claims is vacated and the case is remanded to the district court for further proceedings on plaintiffs' substantive claims, consistent with this opinion. SO ORDERED. The parties shall bear their own costs.5 SO ORDERED. The parties shall bear their own costs. __________ ______________________________________ 37